UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v

STATE OF MICHIGAN; GRETCHEN
WHITMER, in her official capacity as
Governor of Michigan; and DANA NESSEL, in
her official capacity as Michigan Attorney
General,

      Defendants.

No. 1:25-cv-00496-JMB-SJB

HON. JANE M. BECKERING

MAG. SALLY J. BERENS

**BRIEF IN SUPPORT OF
MOTION TO DISMISS
PURSUANT TO RULE 12(b)(1)**

---

Adam R.F. Gustafson
Acting Assistant Attorney General
Robert N. Stander
Deputy Assistant Attorney General
Justin D. Heminger
Attorney
Attorneys for Plaintiff
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7415
Washington, D.C. 20044
202-514-5442
justin.heminger@usdog.gov

---

Richard S. Kuhl (P42042)
Assistant Attorney General
Attorney for Defendants
Michigan Department of Attorney General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
517-335-7664
KuhlR@michigan.gov

Daivd M. Uhlmann
D.C. Bar No. 428216
Special Assistant Attorney
General
Attorney for Defendants
Marten Law, LLP
Attorney for Defendants
1747 Pennsylvania Ave NW, Ste
1250
Washington, DC 20006
202-642-3648
duhlmann@martenlaw.com

---

**BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE
12(b)(1)**

Richard S. Kuhl (P42042)
Assistant Attorney General
Attorney for Defendants
Michigan Department of Attorney General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
KuhlR@michigan.gov

David M. Uhlmann
D.C. Bar No. 428216
Special Assistant Attorney General
Attorney for Defendants
Marten Law, LLP
1747 Pennsylvania Avenue NW
Suite 1250
Washington, DC 20006
(202) 642-3648
duhlmann@martenlaw.com

Dated:  June 20, 2025

# TABLE OF CONTENTS

Page

Index of Authorities ...................................................................................... ii

Concise Statement of Issue Presented ......................................................... iv

Controlling or Most Appropriate Authority ................................................. iv

Introduction .................................................................................................. 1

Statement of Facts ........................................................................................ 2

Standard of Review ....................................................................................... 4

Argument ...................................................................................................... 6

I.      This case is an unwarranted and preemptive attack on state
        sovereignty, unmoored from any concrete claims that federal courts
        can adjudicate, and should be dismissed for lack of subject-matter
        jurisdiction on ripeness grounds. ...................................................... 6

        A.      The United States' speculative *parens patriae* claims and alleged
                injuries, all predicated on the potential for future state law
                climate claims against the fossil fuel industry that may or may
                not be filed, are hypothetical and conjectural. ........................ 6

        B.      The United States would suffer no hardship from deferring
                judicial review until the State of Michigan determines whether
                to file any climate claims under state law and state courts have
                determined whether those claims may proceed under state law. ........ 11

Conclusion and Relief Requested ............................................................... 14

i

# INDEX OF AUTHORITIES

<u>Page</u>

**Constitutional Provisions**

U.S. Const. art. III, § 2 ................................................................................... 4

**Rules**

Federal Rule of Civil Procedure 12(b)(1) .................................................. 2, 5

**Cases**

*Adult Video Ass'n v. U.S. Dep't of Just.*, 71 F.3d 563, 568 (6th Cir. 1995)............... 12

*Ammex, Inc. v. Cox*, 351 F.3d 697, 707–08 (6th Cir. 2003) ....................................... 10

*Carman v. Yellen*, 112 F.4th 386, 402 (6th Cir. 2024).................................................. 6

*Connection Distrib. Co. v. Holder,* 557 F.3d 321, 342 (6th Cir. 2009). ....................... 5

*Doe v. Univ. of Michigan*, 78 F.4th 929, 950 (6th Cir. 2023) ...................................... 9

*Google, Inc. v. Hood*, 822 F.3d 212, 225–26 (5th Cir. 2016)...................................... 12

*In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986) .................................. 9

*Kiser v. Reitz*, 765 F.3d 601, 606–07 (6th Cir. 2014)................................................... 5

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 379, 391–418 (1992 ............... 13

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 810 (2003)........................ 11

*New Heights Farm I, LLC v. Great Am. Ins. Co.*, 119 F.4th 455, 460 (6th Cir. 2024) ............................................................................................................ 5, 6, 11

*Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 734 (1998) .................... 11, 12

*OverDrive Inc. v. Open E-Book Forum*, 986 F.3d 958 (6th Cir. 2021) .............. 5, 6, 11

*Philip Morris Inc. v. Harshbarger*, 946 F. Supp. 1067, 1075–76 (D. Mass. 1996) ............................................................................................................ 13

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 245 (1952)........... 4, 6, 10, 14

*R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501 (1941)................................. 13

*Saginaw Cnty. v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 954 (6th Cir. 2020) .................................................................................... 4, 7, 10

*Texas v. United States*, 523 U.S. 296, 300 (1998) ..................................... 4, 9

*Trump v. New York*, 592 U.S. 125, 131 (2020) ..................................... 5, 9, 11

*U.S. Dep't of Treasury v. Nat'l Treasury Emps. Union*, Chapter 73, No. CV 2:25-049-DCR, 2025 WL 1446376, at *13 (E.D. Ky. May 20, 2025) ........................ 7

*United States v. West Virginia*, 295 U.S. 463, 474 (1935) ............................ 4

*Warshak v. United States,* 532 F. 3d 521, 526 (6th. Cir. 2008) ................................ 10

## CONCISE STATEMENT OF ISSUE PRESENTED

Whether this Court should dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) an unripe Complaint by the United States, which seeks to enjoin the State of Michigan from pursuing state law climate claims against the fossil fuel industry, when Michigan has yet to file any climate claims?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*: U.S. Const. art. III, § 2;

    Fed. R. Civ. P. 12(b)(1);

    *Trump v. New York*, 592 U.S. 125 (2020);

    *New Heights Farm I, LLC v. Great Am. Ins. Co.*, 119 F.4th 455 (6th Cir. 2024);

    *OverDrive Inc. v. Open E-Book Forum*, 986 F.3d 954 (6th Cir. 2021);

    *Saginaw Cnty. v. STAT Emer. Med. Servs., Inc.*, 946 F.3d 951 (6th Cir. 2020).

## INTRODUCTION

In a speculative and preemptive attack on state sovereignty—contingent on future events that may never occur—the United States seeks an advisory opinion and anticipatory judgment that would prevent the State of Michigan, Governor Gretchen Whitmer, and Attorney General Dana Nessel (together, Michigan) from seeking damages for climate change under any "state law" against any "fossil fuel companies" because the United States presumes that such a case would be based upon claims that are preempted or unconstitutional (Compl. ¶¶ 4, 30, *passim*).

Michigan has not filed any climate change lawsuits against the fossil fuel industry that the United States insists must be protected in *parens patriae* nor any other climate-related claims that injure federal sovereign or proprietary interests. As a result, Michigan has brought no state law claims that this Court can assess to determine whether they are preempted or unconstitutional—or whether this Court should abstain from such proceedings until state courts have the opportunity to determine whether any claims Michigan pursues are cognizable under state law.

The United States concedes that "[t]he specific theories on which Michigan would sue are known only to Michigan" (*id.* ¶ 14). Nonetheless, the United States insists that this Court should intervene, based solely on speculation by the United States about what claims Michigan might pursue in a future case against fossil fuel companies fully capable of defending themselves. The United States disregards settled law on ripeness and contravenes fundamental principles of federalism and State sovereignty—including the ability of States to exercise their police powers to protect state residents, property, and the environment from harm.

1

The Complaint filed by the United States should be dismissed for many reasons. The Court need consider only one: Michigan respectfully requests that the Court dismiss the Complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) because this case is not ripe for adjudication.

## STATEMENT OF FACTS

On April 30, 2025, the United States filed a Complaint against Michigan for declaratory and injunctive relief to prohibit the State from filing any climate suit under state law against fossil fuel companies. When the United States filed its Complaint, Michigan had not sued the fossil fuel industry. That remains true today.

The Complaint relies instead upon two sources: first, an Executive Order directing the United States Attorney General to take legal action against states that are pursuing climate litigation, Exec. Order No. 14260, 90 Fed. Reg. 15513 (Apr. 8, 2025) (cited in Compl. ¶ 1); and second, a newspaper article reporting that Michigan retained outside counsel to advise the state about possible state law climate claims, (Compl. ¶¶ 4, 14, 34, citing S. McClallen, *Michigan to Wage War on Oil and Gas Companies*, Mich. Capitol Confidential (Oct. 14, 2024), https://tinyurl.com/49cjxpm).

The executive order, titled "Protecting American Energy From State Overreach," directs the United States Attorney General to "identify all State and local laws, regulations, causes of action, policies, and practices . . . burdening the identification, development, siting, production, or use of domestic energy resources

that are or may be unconstitutional, preempted by Federal law, or otherwise unenforceable," with an emphasis on any state laws addressing, among other things, "'climate change'" or "carbon or 'greenhouse gas' emissions"; and to "expeditiously take all appropriate action to stop the enforcement of State laws and continuation of civil actions . . . that the Attorney General determines to be illegal." *Id.* § 2(a)–(b). This Complaint appears to extend the last category—continuation of civil action that the United States Attorney General determines to be illegal—to include the commencement of such actions in the future.

The news article about Michigan's decision to retain outside counsel for "climate change litigation" appeared in a publication produced by an organization that "challenges government overreach . . . and advocate[s] for free-market approaches to public policy . . . and limited government." Mackinac Center for Public Policy, *About*, https://www.mackinac.org/about (last visited June 7, 2025). The 748-word article states: "The Department of Attorney General selected the outside legal teams to serve as special assistant attorneys general to sue the fossil fuel industry on behalf of the State of Michigan" (McClallen, *supra*). The article adds: "None of the firms responded to a request for comment. The lawsuit hasn't been filed yet, so the defendants are unclear" (*id.*).

The United States admits that the "anticipated lawsuit" has not been filed (Compl. ¶¶ 37–39, 43–44, 51, 59, 62, 64, 69, 70–71, 84–85) and that it does not know the "specific theories on which Michigan would sue" (*id.* ¶ 14). The United States does not purport to know which companies the State may name, when it may file

suit, or what relief it might seek.  Nevertheless, the United States seeks, *inter alia*,

(1) a declaration that Michigan's "anticipated lawsuit" is "unconstitutional" and (2)

a permanent injunction prohibiting Michigan "from taking actions to assert

Michigan's state law claims" (*id.* at 22).

## STANDARD OF REVIEW

The jurisdiction of federal courts is limited to "Cases" and "Controversies."

U.S. Const. art. III, § 2.  A core feature of this constitutional limitation is the

concept of ripeness, which precludes federal courts from exercising jurisdiction over

cases that are speculative or hypothetical.  "A claim is not ripe for adjudication if it

rests upon contingent future events that may not occur as anticipated, or indeed

may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal

quotation marks and citation omitted).  As the Sixth Circuit has explained, Article

III "allows federal courts to deliver judgments on real disputes, not hypothetical

ones, to resolve concrete disputes, not to pronounce judgments on theoretical

disputes that may or may not materialize and, if they do, may appear in a variety of

forms." *Saginaw Cnty. v. STAT Emer. Med. Servs., Inc.*, 946 F.3d 951, 954 (6th Cir.

2020).  "The Declaratory Judgment Act does not alter these rules." *Id.* at 954

(citation omitted). Nor does the United States' position as plaintiff diminish the

requirements of Article III.  *United States v. West Virginia*, 295 U.S. 463, 474

(1935).  Moreover, "[d]eclaratory proceedings in the federal courts against state

officials must be decided with regard for the implications of . . . federalism." *Pub.

Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 247 (1952).

4

"The ripeness inquiry turns on the answers to two questions.  One:  Does the claim arise in a concrete factual context and concern a dispute that is likely to come to pass?"  *New Heights Farm I, LLC v. Great Am. Ins. Co.*, 119 F.4th 455, 460 (6th Cir. 2024) (internal quotation marks and brackets omitted).  This first question addresses the requirement of Article III standing that the alleged "injury" be "concrete, particularized, and imminent rather than conjectural or hypothetical."  *Trump v. New York*, 592 U.S. 125, 131 (2020) (internal quotation marks omitted); *see also OverDrive Inc. v. Open E-Book Forum*, 986 F.3d 954, 958 (6th Cir. 2021).  And "[t]wo:  Does deferring review impose 'hardship' on the participants in the lawsuit?"  *New Heights Farm*, 119 F.4th at 460 (citation omitted).[1]  The plaintiff bears the burden of proof on both prongs.  *Connection Distrib. Co. v. Holder,* 557 F.3d 321, 342 (6th Cir. 2009).  Failure to meet that burden on a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(1) will result in dismissal.  *Id.* at 915–19 (addressing Rules 12(b)(1) and (b)(6)).

---

[1] "Although the ripeness doctrine traditionally incorporates both constitutional and prudential elements," the Supreme Court has "cast into some doubt 'the continuing vitality' of the long-established prudential aspects of the ripeness doctrine."  *Kiser v. Reitz*, 765 F.3d 601, 606–07 (6th Cir. 2014) (citations omitted).  But "[f]or now, the Supreme Court continues to look at both questions," as does the Sixth Circuit.  *OverDrive*, 986 F.3d at 958 (citing *Trump*, 592 U.S. at 132).

## ARGUMENT

**I.    This case is an unwarranted and preemptive attack on state sovereignty, unmoored from any concrete claims that federal courts can adjudicate, and should be dismissed for lack of subject-matter jurisdiction on ripeness grounds.**

The Complaint filed by the United States in this case is an assault on state sovereignty that ignores the case or controversy requirement of Article III and the principles of federalism embedded throughout the Constitution.  The United States seeks to prohibit Michigan from filing a climate lawsuit, based solely on an Executive Order, a newspaper article, and its belief that any Michigan lawsuit will be based on greenhouse gas emissions that occurred in other states.  In so doing, the United States asks the Court to "wad[e] into the world of the hypothetical," *Carman v. Yellen*, 112 F.4th 386, 402 (6th Cir. 2024); deliver "hypothetical rulings about hypothetical facts," *OverDrive*, 986 F.3d at 958; and hold "that it win any such case before it is commenced." *Wycoff*, 344 U.S. at 245.  The Court should decline that request and instead hold that this case is not ripe for adjudication.

**A.    The United States' speculative *parens patriae* claims and alleged injuries, all predicated on the potential for future state law climate claims against the fossil fuel industry that may or may not be filed, are hypothetical and conjectural.**

The first question in the ripeness inquiry is:  "Does the claim arise in a concrete factual context and concern a dispute that is likely to come to pass?"  *New Heights Farm*, 119 F.4th at 460 (internal quotation marks and brackets omitted).  The answer is a resounding no.  The Complaint filed by the United States is a freewheeling exercise in speculation on both fact and application of law.  The sole factual source on which the United States relies is an online article stating that

Michigan is considering suing fossil fuel companies at some point.  (Compl. ¶¶ 4, 14,
34).  "But there is a world of difference between talking about potential legal claims
and acting on them." *Saginaw*, 946 F.3d at 955.  Indeed, a "speculative fear" that a
defendant "might institute a lawsuit at some time in the future . . . is not enough to
state an injury in fact." *Id.* (county's suit for declaratory judgment on propriety of
ordinance not ripe where defendant had threatened but not initiated legal action);
*see also U.S. Dep't of Treasury v. Nat'l Treasury Emps. Union, Ch. 73*, No. CV 2:25-
049-DCR, 2025 WL 1446376, at *13 (E.D. Ky. May 20, 2025) (Department of
Treasury's suit against union for declaratory judgment held not ripe where theory of
injury "rest[ed] on a series of hypothetical occurrences").

The United States acknowledges, as it must, that Michigan has not filed suit.
The United States concedes that it does not know what claims Michigan might
assert, if the state decides to pursue climate litigation against the fossil fuel
industry.  Yet, despite the fact that Michigan has not filed suit, the United States
purports to possess remarkable clairvoyance both about what state law claims
Michigan will pursue and what state law claims Michigan will not pursue.

The Complaint predicts that the State "would improperly" and necessarily:
seek to "regulate out-of-state greenhouse gas emissions" (*id.* ¶ 31); "second-guess
EPA's regulatory choices" (*id.* ¶ 38); inspire "other States" to "pursue similar
claims" (*id.* ¶ 40); "seek extraterritorial liability" and "increase the United States'
costs for purchasing fuels and threaten revenue from federal leasing" (*id.* ¶ 44);
"seek to 'impose strict liability'" (*id.* ¶ 51); "impose substantial burdens on interstate

commerce" (*id.* ¶ 62); "seek to impose liability on fossil fuel businesses for activities—extraction and refining of fossil fuels—that occurred 'worldwide' in foreign countries" and "discriminate against foreign commerce" (*id.* ¶ 70); "complicate the United States' relations with foreign countries" (*id.* ¶ 84); intrude on "trade policy" (*id.* ¶ 86); and exceed Michigan's authority to regulate the "local" activities of international corporations (*id.* ¶¶ 71, 86).

The Complaint further presumes that Michigan's lawsuit will not:  "take advantage of t[he] slim reservoir of state common law" that the United States concedes States are "plainly permit[ted]" to pursue (*id.* ¶¶ 36–37) (citations omitted); "be limited to conduct with a substantial nexus to the State" (*id.* ¶ 52); or enforce "environmental standards for in-state operations," the propriety of which the United States "does not challenge" (*id.* ¶ 85, acknowledging same as within "Michigan's authority to enact regulations that incidentally affect international corporations").

Struggling to make this case seem ripe when it most assuredly is not, the United States frequently refers to Michigan's hypothetical lawsuit in the present tense throughout the Complaint, implying that the mere prospect of a lawsuit is harmful (*see, e.g.*, *id.* ¶¶ 37, 50, claiming that the "anticipated lawsuit frustrates" federal law and "violate[s] the Constitution").  Yet the United States admits it does not actually know the nature of what claims Michigan might assert (*id.* ¶ 14).  It cannot credibly claim otherwise; the development of any claims is indisputably

confidential under attorney work product and attorney-client privileges. *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986).

The United States' "guesswork" does not suffice to establish a concrete injury under Article III. *Trump*, 592 U.S. at 132. Its theory of injury (*e.g.,* Compl. ¶ 7) "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300. These events would have to include, at a minimum: (1) Michigan choosing to proceed and actually filing a lawsuit; (2) any future lawsuit containing claims based on greenhouse gas emissions in other states; (3) Michigan not bringing claims within the purview that the United States concedes would be proper for a State to bring (Compl. ¶¶ 36–37, 85); (4) state courts rejecting arguments alleging those claims are preempted or unconstitutional; and (5) state courts instead accepting Michigan's claims and awarding damages.

Whether any of these events will come to pass is unknown at this time, and the United States' predictions are pure conjecture. Courts routinely dismiss as unripe cases based on similar predictions about future events. "Any prediction how" Michigan "might eventually implement" its potential lawsuit, if at all, "is no more than conjecture at this time." *Trump*, 592 U.S. at 131 (challenge to a Presidential memorandum directing implementation of an apportionment policy "to the extent feasible" not ripe because how policy would be implemented, if at all, was uncertain); *Doe v. Univ. of Mich.*, 78 F.4th 929, 950 (6th Cir. 2023) (challenge to university's policy not ripe where the "potential outcome to which [plaintiff] objected

depended on a number of factors" that had not yet come to pass, including university punishing plaintiff without providing process required by law).

That the Complaint presents complex questions of constitutional and statutory law and obvious federalism concerns reinforces the fact that addressing the merits on this barren factual record—with no actual lawsuit in existence to challenge—would be improper.  *See Warshak v. United States,* 532 F. 3d 521, 526 (6th. Cir. 2008) ("Answering difficult legal questions before they arise and before the courts know how they will arise is not the way we typically handle constitutional litigation."); *Ammex, Inc. v. Cox,* 351 F.3d 697, 707–08 (6th Cir. 2003) (noting need for factual development on Commerce Clause and preemption claims in finding claims unripe); *Saginaw,* 946 F.3d at 958 ("Pre-enforcement constitutional lawsuits also face a concreteness problem of their own.  It's difficult to bring an as-applied constitutional challenge before the gritty who/what/when details of enforcement have been worked out.").  The Supreme Court has often "disapproved anticipatory declarations as to state regulatory statutes."  *Wycoff*, 344 U.S. at 247.  And "[a]nticipatory judgment by a federal court to frustrate action by a state agency is even less tolerable to our federalism." *Id*.[2]

---

[2] Michigan's retention of counsel "to pursue litigation related to the climate change impacts" does not make this case any riper.  *See* Mich. Dep't of Att'y Gen., *Requests for Proposals for Climate Change Litigation*, https://www.michigan.gov/ag/environment/climate-change (containing request for proposal and contract referenced in online article cited by United States (*see* Compl. ¶¶ 4, 14, 34)).  The Statement of Work provides that counsel are tasked with "[i]dentifying *viable* claims and causes of action against fossil fuel industry defendants"; "[i]dentifying *possible* defendants"; [p]ursuing all claims and actions in connection with an *approved* litigation strategy"; and "[h]andling all appeals that *may* arise out of the

In short, "[a]t present, this case is riddled with contingencies and speculation that impede judicial review." *Trump*, 592 U.S. at 131.

**B. The United States would suffer no hardship from deferring judicial review until the State of Michigan determines whether to file any climate claims under state law and state courts have determined whether those claims may proceed under state law.**

The second question in the ripeness inquiry is:  "Does deferring review impose 'hardship' on the participants in the lawsuit?"  *New Heights Farm,* 119 F.4th at 460 (citation omitted).  Again, the answer is a resounding no.  The possibility that Michigan may file a lawsuit in the future against third parties does not create a hardship on the United States today.  As a result, "[a]ny theory of prejudice is just as unripe as everything else in this claim."  *OverDrive*, 986 F.3d at 958 (no hardship to plaintiff where no current violation of law exists and plaintiff "merely must wait until any new act of (alleged) infringement occurs").  The United States is not substantially altering its daily affairs or refraining from doing anything because of the possibility that Michigan could someday file suit against unidentified fossil fuel companies.  *See Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 810 (2003) (no hardship to plaintiff where "the impact of the regulation could not be said to be felt immediately by those subject to it in conducting their day-to-day affairs and no

_____

litigation, *subject to prior approval* by the Attorney General."  Mich. Dep't of Att'y Gen., *Statement of Work*, https://www.michigan.gov/ag/environment/climate-change/statement-of-work (emphases added).  In other words, many analyses, steps, and decisions remain before any lawsuit materializes, if ever.  Like the policy in *Trump* that would only be implemented "to the extent practicable" and "feasible," "any eventual" lawsuit by Michigan "will reflect both legal and practical constraints, making any prediction about future injury [to the United States] just that—a prediction."  592 U.S. at 131, 133.

irremediably adverse consequences flowed from requiring a later challenge"). "[M]ere uncertainty" over Michigan's anticipated lawsuit does not "constitute[] a hardship for purposes of the ripeness analysis." *Id.* at 811; *see also Adult Video Ass'n v. U.S. Dep't of Just.*, 71 F.3d 563, 568 (6th Cir. 1995) ("caution and uncertainty caused by withholding judicial relief" was not "undue hardship"). On the contrary, as the Executive Order makes clear, the United States is pursuing policies that accelerate and promote fossil fuel exploration and production.

There is also no hardship to the United States in waiting until its claims are ripe because all the challenges it raises now could be raised by the actual defendants (if and when they are named) or by the United States should it successfully seek to intervene in any eventual lawsuit brought by Michigan. *See Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 734 (1998) (no hardship to plaintiff in waiting to bring challenge to forest management plan where plaintiff "will have ample opportunity later to bring its legal challenge at a time when harm is more imminent and more certain"); *Google, Inc. v. Hood*, 822 F.3d 212, 225–26 (5th Cir. 2016) (no hardship where subpoena issued to plaintiff could be contested in state court when enforcement began). Indeed, it strains credulity for the United States to suggest that it must proceed in *parens patriae* to protect the fossil fuel industry, which is more than capable of defending itself if Michigan files suit.

Nor do cases regarding successful pre-enforcement challenges lend support to the speculative Complaint filed by the United States. The absence of even a decision on what, if any, legal theories will be brought by Michigan distinguishes

this case from cases like *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 379, 391–418 (1992)—where the specific grounds for threatened enforcement by state attorneys general were abundantly clear from served notices of intent to sue, extensive guidelines issued by the National Association of Attorneys General, and memoranda sent to specific airlines—and *Philip Morris Inc. v. Harshbarger*, 946 F. Supp. 1067, 1075–76 (D. Mass. 1996)—where a state attorney general's filing of the threatened lawsuit during the pendency of a pre-enforcement challenge to the same obviated any question of what legal theories would be raised or whether the suit would be brought at all. Michigan is not aware of any cases allowing pre-enforcement challenges except by potential defendants, and none by the United States in a *parens patriae* capacity making claims that undermine state sovereignty.

The absence of any hardship to the United States—or the fossil fuel companies that the federal government believes require its protection—is further underscored by the fact that no Michigan state court has had the opportunity to determine the viability of climate change claims under Michigan law.  If Michigan decides to file a climate suit against the fossil fuel industry based on state law claims, Supreme Court precedent counsels that Michigan state courts should have the opportunity to determine what claims are authorized under Michigan law and to do so in a manner that conforms to Constitutional requirements, which may forestall any potential harm to any federal interests in such a suit.  *See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501 (1941) (detailing "a doctrine of

abstention appropriate to our federal system whereby the federal courts, 'exercising a wise discretion', restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary" (citations omitted)); *Wycoff*, 344 U.S. at 248 ("Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law.").

In sum, the United States has failed to meet its burden of showing how it will suffer hardship if this Court defers review of its federal preemption and constitutional arguments until the State of Michigan decides whether to file any climate lawsuit.  Nor has the United States made any showing how its interests will be harmed if this Court abstains from review until Michigan state courts have had the opportunity to speak to what climate claims are actionable under Michigan law.

## CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, this case is fundamentally unripe for adjudication. The United States all but admits as much in its Complaint.  The claims the United States asserts are not viable under binding ripeness law, and no exigency exists that would merit re-interpreting the plain text of Article III of the U.S. Constitution and decades of caselaw applying the case or controversy requirement.  Michigan therefore respectfully requests that the Court dismiss the Complaint for lack of subject-matter jurisdiction.

Respectfully submitted,


/s/ Richard S. Kuhl
Richard S. Kuhl (P42042)
Assistant Attorney General
Attorney for Defendants
Michigan Department of Attorney General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
KuhlR@michigan.gov

David M. Uhlmann
D.C. Bar No. 428216
Special Assistant Attorney General
Attorney for Defendants
Marten Law, LLP
1747 Pennsylvania Avenue NW
Suite 1250
Washington, DC 20006
(202) 642-3648
duhlmann@martenlaw.com

Dated:  June 20, 2025

**CERTIFICATE OF COMPLIANCE**

This memorandum complies with the word limit of W.D. Mich. LCivR 7.3(b)(i)

because, excluding the parts exempted by W.D. Mich. LCivR 7.3(b)(i), it contains

3,930 words. The word count was generated using Microsoft Word for Microsoft 365

MSO Version 2505.

*/s/ Richard S. Kuhl*
Richard S. Kuhl (P42042)
Assistant Attorney General
Attorney for Defendants
Michigan Department of Attorney General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
KuhlR@michigan.gov
