UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v

STATE OF MICHIGAN; GRETCHEN
WHITMER, in her official capacity as
Governor of Michigan; and DANA NESSEL, in
her official capacity as Michigan Attorney
General,

        Defendants.

No. 1:25-cv-00496-JMB-SJB

HON. JANE M. BECKERING

MAG. SALLY J. BERENS

**BRIEF IN SUPPORT OF
RENEWED MOTION TO
DISMISS PURSUANT TO
RULE 12(B)(1)**

---

Adam R.F. Gustafson
Acting Assistant Attorney General
Robert N. Stander
Deputy Assistant Attorney General
Justin D. Heminger
Attorney
Attorneys for Plaintiff
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7415
Washington, D.C. 20044
202-514-5442
justin.heminger@usdog.gov

---

Richard S. Kuhl (P42042)
Assistant Attorney General
Attorney for Defendants
Michigan Department of Attorney General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
517-335-7664
KuhlR@michigan.gov

Daivd M. Uhlmann
D.C. Bar No. 428216
Special Assistant Attorney
General
Attorney for Defendants
Marten Law, LLP
1747 Pennsylvania Ave NW, Ste
1250
Washington, DC 20006
202-642-3648
duhlmann@martenlaw.com

---

**BRIEF IN SUPPORT OF RENEWED MOTION TO DISMISS PURSUANT TO
RULE 12(B)(1)**

Richard S. Kuhl (P42042)
Assistant Attorney General
Attorney for Defendants
Michigan Department of Attorney General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
KuhlR@michigan.gov

David M. Uhlmann
D.C. Bar No. 428216
Special Assistant Attorney General
Attorney for Defendants
Marten Law, LLP
1747 Pennsylvania Avenue NW
Suite 1250
Washington, DC 20006
(202) 642-3648
duhlmann@martenlaw.com

Dated:  July 31, 2025

## TABLE OF CONTENTS

Page

Index of Authorities ................................................................................................ ii

Concise Statement of Issue Presented ................................................................ iv

Controlling or Most Appropriate Authority ...................................................... iv

Introduction ............................................................................................................ 1

Statement of Facts ................................................................................................. 3

Standard of Review ................................................................................................ 5

Argument ................................................................................................................. 6

I.      This case remains an unwarranted and preemptive attack on state
        sovereignty, unmoored from any concrete claims that federal courts
        can adjudicate, and should be dismissed for lack of subject-matter
        jurisdiction on ripeness grounds. ........................................................ 6

        A.      The United States' alleged injuries, all predicated on the
                potential for undetermined future climate claims against the
                fossil fuel industry, are hypothetical and conjectural........................... 7

        B.      The United States would suffer no hardship from deferring
                judicial review until the State of Michigan files any climate
                claims against private defendants........................................................ 15

Conclusion and Relief Requested .......................................................................... 19

Certificate of Compliance ...................................................................................... 20

# INDEX OF AUTHORITIES

Page

**Constitutional Provisions**

U.S. Const. art. III, § 2 ................................................................................. 5

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ................................................. 3, 6

Federal Rule of Civil Procedure 12(h)(3) ..................................................... 6

**Cases**

*Adult Video Ass'n v. U.S. Dep't of Just.*, 71 F.3d 563 (6th Cir. 1995) ...................... 15

*Ammex, Inc. v. Cox*, 351 F.3d 697 (6th Cir. 2003) ........................................... 14

*Baaghil v. Miller*, 1 F.4th 427 (6th Cir. 2021) ............................................... 9

*Carman v. Yellen*, 112 F.4th 386 (6th Cir. 2024) ....................................... 6, 7

*City of New York v. Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021) ............................... 13

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) ......................................... 15

*Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy USA, Inc.*, 2025 WL
   1363355 (Colo. May 12, 2025) .................................................................... 13

*Doe v. Univ. of Michigan*, 78 F.4th 929 (6th Cir. 2023) ................................... 9

*Fischer v. Thomas*, 52 F.4th 303 (6th Cir. 2022) ........................................... 17

*Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016) ........................................... 16

*Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229 (1984) ........................................... 1

*Kiser v. Reitz*, 765 F.3d 601  (6th Cir. 2014) ............................................... 6

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992 ...................................... 16

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003) .............................. 15

*New Heights Farm I, LLC v. Great Am. Ins. Co.*, 119 F.4th 455 (6th Cir. 2024).. 6, 15

*Norton v. Ashcroft*, 298 F.3d 547 (6th Cir. 2002) .......................................................... 17

*Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726 (1998) ............................. 15, 16

*OverDrive Inc. v. Open E-Book Forum*, 986 F.3d 958 (6th Cir. 2021) ........... 6, 7, 9, 15

*Philip Morris Inc. v. Harshbarger*, 946 F. Supp. 1067 (D. Mass. 1996) ................... 17

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237 (1952) ............................. 6, 14

*Saginaw Cnty. v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951 (6th Cir.
   2020) .................................................................................................................. 5, 8, 14

*Sherwin-Williams Co. v. County of Delaware*, 968 F.3d 264 (3d Cir. 2020).. 11, 12, 16

*State ex rel. Jennings v. BP Am. Inc.*, No. N20C-09-097 MMJ CCLD, 2024 WL
   98888 (Del. Super. Ct. Jan. 9, 2024) ........................................................................ 13

*Texas v. United States*, 523 U.S. 296 (1998) ........................................................... 5, 8

*Trump v. New York*, 592 U.S. 125 (2020) ...................................................... 6, 7, 9, 14

*U.S. Dep't of Treasury v. Nat'l Treasury Emps. Union, Ch. 73*, 2025 WL
   1446376 (E.D. Ky. May 20, 2025) ............................................................................ 10

*Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356 (6th Cir. 2022) ........................... 2

*United States v. West Virginia*, 295 U.S. 463 (1935) .................................................... 5

*Warshak v. United States,* 532 F. 3d 521 (6th. Cir. 2008) ........................................ 14

## CONCISE STATEMENT OF ISSUE PRESENTED

Whether this Court should dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) an unripe Amended Complaint by the United States, which seeks to enjoin the State of Michigan from pursuing climate claims against the fossil fuel industry, when Michigan has yet to file any such claims, and the Court therefore would be required to assess the viability of hypothetical claims?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*:    U.S. Const. art. III, § 2;

Fed. R. Civ. P. 12(b)(1);

*Trump v. New York*, 592 U.S. 125 (2020);

*OverDrive Inc. v. Open E-Book Forum*, 986 F.3d 954 (6th Cir. 2021);

*Saginaw Cnty. v. STAT Emer. Med. Servs., Inc.*, 946 F.3d 951 (6th Cir. 2020);

*Sherwin-Williams Co. v. County of Delaware*, 968 F.3d 264 (3d Cir. 2020).

## INTRODUCTION

In a speculative and preemptive attack on state sovereignty—contingent on hypothetical future events—the United States seeks an advisory opinion and anticipatory judgment that would prevent the State of Michigan, Governor Gretchen Whitmer, and Attorney General Dana Nessel (together, Michigan) from pursuing climate change litigation under any state law against any fossil fuel companies, because the United States presumes that any climate action pursued by Michigan would be based upon claims that are preempted or unconstitutional.

Michigan has not filed any climate-related lawsuits against any member of the fossil fuel industry, which the United States insists must be protected in *parens patriae*.  Nor has Michigan pursued any climate-related claims that injure or threaten to injure federal sovereign or proprietary interests.  Even if Michigan files a climate-related suit against fossil fuel companies or other defendants in the future, the United States does not know what claims Michigan will bring, who the defendants will be, where the suit will be brought, nor whether those claims will be based on state law or federal law.  As a result, there are no specific claims that this Court can assess to determine whether they are preempted or unconstitutional.[1]

---

[1] In the event Michigan files suit in state court seeking relief under state law, as the United States insists Michigan will do, this Court also would need to determine whether to abstain until state courts have the opportunity to determine whether any state law claims Michigan pursues are cognizable under state law.  *See Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984) ("[F]ederal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided.").

Nonetheless, the United States insists that this Court should enter a sweeping injunction against Michigan based solely on speculation about what claims Michigan might pursue in a future case.  The proposed injunction would bar claims the United States concedes Michigan has the authority to bring and could not be narrowed by the Court for the simple reason that the United States does not and cannot know what claims Michigan might bring until the State files suit.[2]

Based on the glaring deficiencies in the original Complaint, which included a telling concession that "[t]he specific theories on which Michigan would sue are known only to Michigan" (Compl. ¶ 14), Michigan moved to dismiss on ripeness grounds.  Then, even though none of the underlying facts had changed, the United States filed an Amended Complaint that tries to bolster its assertion that Michigan intends to sue the fossil fuel industry for causing climate change, while continuing to speculate about what claims Michigan might pursue.

The United States has not cured the fatal defects in its case. The Amended Complaint disregards settled law on ripeness and contravenes fundamental principles of federalism and state sovereignty, including the ability of states to provide a remedy for in-state injuries caused by private actors that engage in tortious conduct.  The arguments made by the United States can and should be

---

[2] *See Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 364 (6th Cir. 2022) ("An injunction is overly broad when there is a risk that it restrains legal conduct . . . ."). The United States' inability to narrow its requested relief is a symptom of both its disregard for state sovereignty and the threshold jurisdictional defects in this case.

raised as defenses by the defendants in any future climate lawsuit filed by Michigan—or by the United States, if it is permitted to intervene in such a case.

The Amended Complaint, like the original, should be dismissed for many reasons. The Court still need consider only one: Michigan respectfully requests that the Court dismiss the Amended Complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) because this case remains unripe for adjudication.

## STATEMENT OF FACTS

On April 30, 2025, the United States filed a Complaint against Michigan for declaratory and injunctive relief to prohibit the State from filing a climate-related suit under state law against fossil fuel companies. On June 20, Michigan moved to dismiss on ripeness grounds. Rather than respond, the United States filed an Amended Complaint on July 11. But this core undisputed fact remains: From the time the United States filed its initial Complaint to today, Michigan has not sued anyone. As a result, there are no pending climate claims for this Court to assess.

The United States bases both its original Complaint and its Amended Complaint on an executive order from President Donald J. Trump directing the U.S. Attorney General to take legal action against States that are pursuing climate-related litigation, Exec. Order No. 14260, 90 Fed. Reg. 15513 (Apr. 8, 2025) (cited in Am. Compl. ¶ 1). The executive order, titled "Protecting American Energy From State Overreach," directs the U.S. Attorney General to "identify all State and local laws, regulations, causes of action, policies, and practices . . . burdening the identification, development, siting, production, or use of domestic energy resources

that are or may be unconstitutional, preempted by Federal law, or otherwise unenforceable," with an emphasis on any state laws addressing, among other things, "'climate change'" or "carbon or 'greenhouse gas' emissions"; and to "expeditiously take all appropriate action to stop the enforcement of State laws and continuation of civil actions . . . that the Attorney General determines to be illegal." *Id.* § 2(a)–(b).  The Amended Complaint appears to extend the last category—continuation of civil action that the U.S. Attorney General determines to be illegal—to include all climate-related claims that may be filed by states in the future.

In its initial Complaint, the extent of the United States' factual allegations involved citation to a 748-word article on Michigan's potential climate litigation, (Compl. ¶¶ 4, 14, 34, citing S. McClallen, *Michigan to Wage War on Oil and Gas Companies*, Mich. Capitol Confidential (Oct. 14, 2024), https://tinyurl.com/49jcjxpm).  The Amended Complaint now cites Michigan's request for proposals for climate litigation services (Am. Compl. ¶¶ 15–17; Exs. 1–2 to Am. Compl., ECF No. 8 at PageID.93–101); an accompanying statement of work (Am. Compl. ¶¶ 18–19; Ex. 3 to Am. Compl., ECF No. 8 at PageID.103–105); and the State's subsequent contracts with three selected law firms (Am. Compl. ¶¶ 20–21; Exs. 4–5 to Am. Compl., ECF No. 8 at PageID.106–26) as purported proof of an "imminent threat" of an allegedly unconstitutional and preempted lawsuit against fossil fuel companies (*id.* ¶ 24).  None of the newly cited materials, however, nor the accompanying *ad hominem* attack on Attorney General Nessel (*id.* ¶¶ 24–25), identify what specific claims Michigan would bring in any eventual climate-related lawsuit.

The United States acknowledges that the "anticipated lawsuit" has not been filed (*id.* ¶¶ 22, 53, 60, 75, 85–86, 100–01). Nevertheless, the United States seeks, *inter alia*, (1) a declaration that Michigan's unfiled and undetermined state law claims are "unconstitutional" and (2) a permanent injunction prohibiting Michigan "from taking actions to assert Michigan's state law claims" (*id.* at 28).

## STANDARD OF REVIEW

The jurisdiction of federal courts is limited to "Cases" and "Controversies." U.S. Const. art. III, § 2. A core feature of this constitutional limitation is the concept of ripeness, which precludes federal courts from exercising jurisdiction over cases that are speculative or hypothetical. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks and citation omitted). As the Sixth Circuit has explained, Article III "allows federal courts to deliver judgments on real disputes, not hypothetical ones, to resolve concrete disputes, not to pronounce judgments on theoretical disputes that may or may not materialize and, if they do, may appear in a variety of forms." *Saginaw Cnty. v. STAT Emer. Med. Servs., Inc.*, 946 F.3d 951, 954 (6th Cir. 2020). "The Declaratory Judgment Act does not alter these rules." *Id.* at 954 (citation omitted). Nor does the fact that the United States is the plaintiff diminish the requirements of Article III. *United States v. West Virginia*, 295 U.S. 463, 474 (1935). Moreover, "[d]eclaratory proceedings in the federal courts against state

officials must be decided with regard for the implications of . . . federalism." *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 247 (1952).

"The ripeness inquiry turns on the answers to two questions.  One:  Does the claim arise in a concrete factual context and concern a dispute that is likely to come to pass?"  *New Heights Farm I, LLC v. Great Am. Ins. Co.*, 119 F.4th 455, 460 (6th Cir. 2024) (internal quotation marks and brackets omitted).  This first question addresses the requirement of Article III standing that the alleged "injury" be "concrete, particularized, and imminent rather than conjectural or hypothetical." *Trump v. New York*, 592 U.S. 125, 131 (2020) (internal quotation marks omitted); *see also OverDrive Inc. v. Open E-Book Forum*, 986 F.3d 954, 958 (6th Cir. 2021) (ripeness and Article III injury-in-fact requirement merge).  And "[t]wo:  Does deferring review impose 'hardship' on the participants in the lawsuit?"  *New Heights Farm*, 119 F.4th at 460 (citation omitted).[3]  The plaintiff bears the burden of proof on both prongs.  *Carman v. Yellen*, 112 F.4th 386, 399 (6th Cir. 2024).  Failure to meet that burden will result in dismissal.  Fed. R. Civ. P. 12(b)(1), (h)(3).

## ARGUMENT

I.   **This case remains an unwarranted and preemptive attack on state sovereignty, unmoored from any concrete claims that federal courts can adjudicate, and should be dismissed for lack of subject-matter jurisdiction on ripeness grounds.**

---

[3] "Although the ripeness doctrine traditionally incorporates both constitutional and prudential elements," the Supreme Court has "cast into some doubt 'the continuing vitality' of the long-established prudential aspects of the ripeness doctrine."  *Kiser v. Reitz*, 765 F.3d 601, 606–07 (6th Cir. 2014) (citations omitted).  But "[f]or now, the Supreme Court continues to look at both questions," as does the Sixth Circuit. *OverDrive*, 986 F.3d at 958 (citing *Trump*, 592 U.S. at 132).

The Amended Complaint filed by the United States is an assault on state sovereignty that ignores the case-or-controversy requirement of Article III and the principles of federalism embedded throughout the Constitution.  The United States seeks to prohibit Michigan from filing a climate lawsuit based on an executive order, the State's retention of outside counsel, and the fervent belief that any future lawsuit will rely upon state law claims targeting greenhouse gas emissions that occurred in other states.  In so doing, the United States asks the Court to "wad[e] into the world of the hypothetical," *Carman*, 112 F.4th at 402; deliver "hypothetical rulings about hypothetical facts," *OverDrive*, 986 F.3d at 958; and hold "that it win any such case before it is commenced," *Wycoff*, 344 U.S. at 245.  The Court should decline that request and instead hold that this case is not ripe for adjudication.

### A.    The United States' alleged injuries, all predicated on the potential for undetermined future climate claims against the fossil fuel industry, are hypothetical and conjectural.

The first question in the ripeness inquiry is:  "Does the claim arise in a concrete factual context and concern a dispute that is likely to come to pass?" *New Heights Farm*, 119 F.4th at 460 (internal quotation marks and brackets omitted). Put another way, has the plaintiff established an injury for purposes of Article III standing that is "concrete, particularized, and imminent rather than conjectural or hypothetical"? *Trump*, 592 U.S. at 131.  The answer is a resounding no.

The Amended Complaint filed by the United States is a freewheeling exercise in speculation on both fact and application of law.  As its sole factual support, the Amended Complaint cites Michigan's retention of counsel for purposes of potential

climate change litigation against fossil fuel companies and the steps it took to select counsel (Am. Compl. ¶¶ 15–21).  The cited materials demonstrate that the United States has not suffered any injury cognizable under Article III.  The statement of work requires retained counsel to "examine, investigate, recommend, and litigate the State's *possible* constitutional, statutory, tort and other applicable common law claims" (Ex. 3 to Am. Compl., ECF No. 8 at PageID.104) (emphasis added).  Counsel are tasked with "[i]dentifying *viable* claims and causes of action" against "*possible* defendants" (*id.* at PageID.105) (emphases added).  Michigan has indeed retained counsel for these purposes.  "But there is a world of difference between talking about potential legal claims and acting on them."  *Saginaw*, 946 F.3d at 955 (county's suit for declaratory judgment on propriety of ordinance not ripe where defendant had threatened but not initiated legal action).  Indeed, a "speculative fear" that a defendant "might institute a lawsuit at some time in the future . . . is not enough to state an injury in fact."  *Id.*

Many steps and decisions remain before any possible injury to the United States or any private defendant sued by Michigan materializes, if ever.  The Amended Complaint's theory of injury (*e.g.,* Am. Compl. ¶ 7) "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas*, 523 U.S. at 300.  These events would have to include, at a minimum:  (1) Michigan choosing to proceed and filing a climate lawsuit; (2) any such lawsuit containing claims based on greenhouse gas emissions in other states; (3) Michigan not bringing claims within the purview that the United States concedes would be

proper for a State to bring (Am. Compl. ¶¶ 52–53, 102); (4) the relevant court rejecting arguments alleging those claims are preempted or unconstitutional; and (5) the courts instead accepting Michigan's claims and granting any requested relief.  Because Michigan's retained counsel have been directed to identify only "viable" claims (Ex. 3 to Am. Compl., ECF No. 8 at PageID.105), "any eventual" lawsuit by Michigan "will reflect both legal and practical constraints, making any prediction about future injury [to the United States] just that—a prediction." *Trump*, 592 U.S. at 131, 133 (challenge to a Presidential memorandum directing implementation of an apportionment policy "to the extent practicable" and "feasible" not ripe because how policy would be implemented, if at all, was uncertain).

But whether all or any of these events will come to pass is unknown at this time, and the United States' predictions about the content of a future lawsuit are pure "guesswork," inadequate to establish a concrete injury under Article III.  *Id.* at 132.  Courts in this circuit routinely dismiss as unripe cases based on similar predictions about future events.  *See, e.g.*, *Doe v. Univ. of Mich.*, 78 F.4th 929, 950 (6th Cir. 2023) (challenge to university's policy not ripe where the "potential outcome to which [plaintiff] objected depended on a number of factors" that had not yet come to pass, including university punishing plaintiff without providing process required by law); *Baaghil v. Miller*, 1 F.4th 427, 435 (6th Cir. 2021) (plaintiff's immigration claims not ripe where they depended on government's future conduct); *OverDrive*, 986 F.3d at 958 (company's copyright infringement action not ripe where it depended on future intellectual property transfer and dissolution of trade

9

association); *U.S. Dep't of Treasury v. Nat'l Treasury Emps. Union, Ch. 73*, No. CV 2:25-049-DCR, 2025 WL 1446376, at *13 (E.D. Ky. May 20, 2025) (Department of Treasury's preemptory suit against union for declaratory judgment not ripe where theory of injury "rest[ed] on a series of hypothetical occurrences").

The United States acknowledges, as it must, that Michigan has not filed suit (Am. Compl. ¶ 14). The United States also implicitly concedes that it does not know what claims Michigan might assert. The United States tries to hand-wave away this uncertainty, suggesting that, "[r]egardless of the exact theories of liability that Michigan employs, its goals are clear—to extract large sums of money from fossil fuel companies for purportedly causing climate change impacts to Michigan" (*id.* ¶ 27). But the Amended Complaint *does* hinge on what "exact theories of liability" Michigan may bring, not just the fact that fossil fuel companies may be defendants. Even the United States distinguishes in the Amended Complaint between state-law claims that it views as improper and the narrower set of claims that the United States acknowledges could be brought by Michigan.

On the one hand, the United States takes issue with climate claims against members of the fossil fuel industry that: "regulate out-of-state greenhouse gas emissions" (*id.* ¶ 47); "second-guess EPA's regulatory choices" (*id.* ¶ 54); impose "extraterritorial liability" and "increase the United States' costs for purchasing fuels and threaten revenue from federal leasing" (*id.* ¶ 60); "'impose strict liability'" (*id.* ¶ 67); "impose substantial burdens on interstate commerce" (*id.* ¶ 78); "impose liability on fossil fuel businesses for activities that occurred 'worldwide' in foreign

countries" and "discriminate against foreign commerce" (*id.* ¶ 86); "complicate the United States' relations with foreign countries" (*id.* ¶ 100); intrude on "trade policy" (*id.* ¶ 102); or exceed Michigan's authority to regulate the "local" activities of international corporations (*id.* ¶¶ 87, 102).

On the other hand, the United States offers that States can permissibly bring climate change claims against members of the fossil fuel industry that:  "take advantage of t[he] slim reservoir of state common law" that the United States concedes States are "plainly permit[ted]" to pursue (*id.* ¶¶ 52–53) (citations omitted); are "limited to conduct with a substantial nexus to the State" (*id.* ¶ 68); or enforce "environmental standards for in-state operations," the propriety of which the United States "does not challenge" (*id.* ¶ 102, acknowledging same as within "Michigan's authority to enact regulations that incidentally affect international corporations").

Nor has the United States presented an exhaustive list of what climate claims Michigan might pursue against members of the fossil fuel industry, which underscores the premature nature of this case.  As the Third Circuit made clear in the strikingly similar case *Sherwin-Williams Co. v. County of Delaware*, 968 F.3d 264 (3d Cir. 2020), even if a lawsuit will be brought some time in the future, a preemptive challenge to that lawsuit is not ripe where the specific theories of liability to be asserted are not yet known.  *Id.* at 270.

In *Sherwin-Williams,* the plaintiff paint company had been sued by two counties over lead-based paint.  *Id.* at 267.  Anticipating similar suits by other

counties, Sherwin-Williams "went on the offensive," suing Delaware County in federal court for declaratory and injunctive relief to prevent the county from filing a similar lead-paint lawsuit.  *Id.* at 267–68.  The Third Circuit affirmed dismissal of Sherwin-Williams' lawsuit for lack of subject-matter jurisdiction, finding that:

> [E]ven if [Sherwin-Williams] could show that a lawsuit were certainly impending, it did not establish that such a *lawsuit* would cause a concrete *injury* to its constitutional rights.  The company's constitutional claims . . . rest on what it anticipates the County might allege in a hypothetical lawsuit.  Such speculation cannot satisfy Article III's standing requirements. Specifically, Sherwin-Williams asks us to assume not only that the County will sue, but also its theory of liability, its litigation tactics, and that the County will prevail.  The County may proceed as Sherwin-Williams predicts.  Or it may not.  And who knows whether the County would win?  That uncertainty— and all of the contingencies that go along with it—expose Sherwin-Williams's inability to allege an existing injury or one that is certainly impending.

*Id.* at 270 (citations and internal quotation marks omitted) (emphases in original).  As in *Sherwin-Williams*, even if the Court assumes that Michigan will bring a climate-related lawsuit, the United States' alleged injuries are unavoidably contingent on whether Michigan pursues theories of liability that implicate the preemption and constitutional arguments hypothesized in the Amended Complaint.

The United States alleges as a fallback that "it is no mystery what claims [Michigan] is likely to assert" (Am. Compl. ¶ 22), since one of the firms retained by Michigan, Sher Edling LLP, has filed climate-related claims against fossil fuel companies on behalf of other states, counties, and cities.  But the United States does not cite any precedent holding that the identity of a client's *counsel* is grounds to speculate about the claims that the *client* may decide to bring someday.  Indeed, Michigan's outside counsel, including Sher Edling attorneys, are Special Assistant

Attorneys General who are "at all times subject to the orders and directions of the attorney general." *See* Mich. Comp. Laws § 14.35.  Even if Michigan were to model its case after prior cases brought by Sher Edling's other clients—yet another assumption by the United States that relies upon speculation—the United States does not and cannot identify which of those prior cases Michigan will imitate.

Public entities represented by Sher Edling and other firms have pursued a number of different legal theories in their prior lawsuits, some of which have survived preemption and constitutional arguments, while others have not.[4]  Even if Sher Edling's representation of clients outside Michigan were somehow relevant, Michigan is—of course—not limited to claims that Sher Edling's other clients have asserted in those cases.  The State may decide to pursue similar climate-related change claims or the State might pursue new legal theories.  As a result, contrary to what the United States insists in its Amended Complaint, there is no certainty about what claims Michigan will assert in any future litigation.

---

[4] *See, e.g.*, *Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy USA, Inc.*, 2025 WL 1363355 (Colo. May 12, 2025) (state-law tort claims seeking damages for exacerbating climate change not preempted by federal common law, Clean Air Act, or federal foreign-affairs power); *City & Cnty. of Honolulu v. Sunoco LP*, 537 P.3d 1173, 1195–1207 (Haw. 2023), *cert. denied*, 145 S. Ct. 1111 (2025) (state-law tort claims premised on companies' alleged failure to warn and deception about fossil fuel products not preempted by federal common law or Clean Air Act); *State ex rel. Jennings v. BP Am. Inc.*, No. N20C-09-097 MMJ CCLD, 2024 WL 98888, at *24 (Del. Super. Ct. Jan. 9, 2024) (Clean Air Act preempted state-law tort and consumer-protection claims targeting out-of-state emissions, but not claims targeting "air pollution originating from sources in Delaware"); *City of New York v. Chevron Corp.*, 993 F.3d 81, 89–103 (2d Cir. 2021) (state-law nuisance and trespass claims targeting "global greenhouse gas emissions" preempted by federal common law and Clean Air Act).

Finally, Michigan notes that the Amended Complaint asks this Court to address complex questions of constitutional and statutory law, which raise significant federalism concerns.  The complex legal issues raised by the Amended Complaint reinforce the conclusion that addressing the merits on a barren factual record—with no actual lawsuit or claims in existence to challenge—would be improper.  *See Saginaw*, 946 F.3d at 958 ("Pre-enforcement constitutional lawsuits also face a concreteness problem. . . . It's difficult to bring an as-applied constitutional challenge before the gritty who/what/when details of enforcement have been worked out."); *Ammex, Inc. v. Cox*, 351 F.3d 697, 707–08 (6th Cir. 2003) (noting need for factual development on Commerce Clause and preemption claims in finding claims unripe); *Warshak v. United States,* 532 F. 3d 521, 526 (6th. Cir. 2008) ("Answering difficult legal questions before they arise and before the courts know how they will arise is not the way we typically handle constitutional litigation.").  The Supreme Court has often "disapproved anticipatory declarations as to state regulatory statutes." *Wycoff*, 344 U.S. at 247.  And "[a]nticipatory judgment by a federal court to frustrate action by a state agency is even less tolerable to our federalism." *Id*.

In short, "[a]t present, this case is riddled with contingencies and speculation that impede judicial review."  *Trump*, 592 U.S. at 131.

**B.    The United States would suffer no hardship from deferring judicial review until the State of Michigan files any climate claims against private defendants.**

The second question in the ripeness inquiry is:  "Does deferring review impose 'hardship' on the participants in the lawsuit?"  *New Heights Farm,* 119 F.4th at 460 (citation omitted).  Again, the answer is a resounding no.  The possibility that Michigan may file a lawsuit in the future against private defendants someday does not create a hardship on the United States today.  As a result, "[a]ny theory of prejudice is just as unripe as everything else in this claim."  *OverDrive*, 986 F.3d at 958 (no hardship to plaintiff where no current violation of law exists and plaintiff "merely must wait until any new act of (alleged) infringement occurs").

The United States is not altering its daily affairs or refraining from doing anything because of the possibility that Michigan could someday file suit against yet-unknown members of the fossil fuel industry.  *See Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 810 (2003) (no hardship to plaintiff where "the impact of the regulation could not be said to be felt immediately by those subject to it in conducting their day-to-day affairs and no irremediably adverse consequences flowed from requiring a later challenge").  "[M]ere uncertainty" over Michigan's anticipated lawsuit does not "constitute[] a hardship for purposes of the ripeness analysis."  *Id.* at 811; *see also Adult Video Ass'n v. U.S. Dep't of Just.*, 71 F.3d 563, 568 (6th Cir. 1995) ("caution and uncertainty caused by withholding judicial relief" was not "undue hardship"); *cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) ("[R]espondents cannot manufacture standing merely by inflicting harm on

15

themselves based on their fears of hypothetical future harm that is not certainly impending.").

There is also no hardship to the United States in waiting until its claims are ripe because all the challenges it raises now could be raised by the actual defendants (if and when they are named) or by the United States should it successfully seek to intervene in any eventual lawsuit brought by Michigan.  *See Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 734 (1998) (no hardship to plaintiff in waiting to bring challenge to forest management plan where plaintiff "will have ample opportunity later to bring its legal challenge at a time when harm is more imminent and more certain"); *Google, Inc. v. Hood*, 822 F.3d 212, 225–26 (5th Cir. 2016) (no hardship where subpoena issued to plaintiff could be contested in state court when enforcement began); *Sherwin-Williams*, 968 F.3d at 270 ("If the County sues, Sherwin-Williams can raise those claims as affirmative defenses in state court." (citation omitted)).  Indeed, it strains credulity for the United States to suggest that it must proceed in *parens patriae* to protect the fossil fuel industry, which is more than capable of defending itself if Michigan decides to file suit.

Nor do cases regarding successful pre-enforcement challenges lend support to the speculative Amended Complaint filed by the United States.  The absence of even a decision on what, if any, legal theories will be brought by Michigan distinguishes this case from cases like *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992)—where the specific grounds for threatened enforcement by state attorneys general were abundantly clear from served notices of intent to sue, extensive

guidelines issued by the National Association of Attorneys General, and memoranda sent to specific airlines—and *Philip Morris Inc. v. Harshbarger*, 946 F. Supp. 1067, 1075–76 (D. Mass. 1996)—where a state attorney general's filing of the threatened lawsuit during the pendency of a pre-enforcement challenge to the same obviated any question of what theories would be raised or whether the suit would be brought.  Michigan is not aware of any cases allowing pre-enforcement challenges except by potential defendants, and none by the United States in a *parens patriae* capacity making claims that would undermine state sovereignty.[5]

The absence of any hardship to the United States—or the fossil fuel companies that the federal government believes require its protection—is further underscored by the fact that no court has had the opportunity to determine the viability of any climate change claims the State may pursue.  The United States is convinced that Michigan will file suit in state court based on state law claims, which may or not prove accurate.  But if Michigan decides to file a climate-related suit based on state law against members of the fossil fuel industry in state court, Supreme Court precedent counsels that Michigan state courts should have the

---

[5] In support of jurisdiction, the United States now cites *Fischer v. Thomas*, 52 F.4th 303 (6th Cir. 2022), a case concerning a pre-enforcement challenge under the First Amendment (Am. Compl. ¶ 28).  But "the ripeness requirement is somewhat relaxed in the First Amendment context," *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002), and the United States has not invoked the First Amendment—a constitutional protection that secures *individual* rights—here.  Moreover, the judicial-candidate plaintiffs in *Fischer* were "self-censoring" their constitutionally protected campaign speech due to the threat of enforcement. 52 F.4th at 307.  In contrast, the United States has not altered its conduct whatsoever due to the supposed threat of Michigan's possible lawsuit against third parties.

opportunity to determine what claims are authorized under Michigan law and to do so in a manner that conforms to constitutional requirements, which may forestall any potential harm to any federal interests in such a suit.  *See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501 (1941) (detailing "a doctrine of abstention appropriate to our federal system whereby the federal courts, 'exercising a wise discretion', restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary" (citations omitted)); *Wycoff*, 344 U.S. at 248 ("Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law.").

In sum, the United States has failed to meet its burden of showing how it (or, for that matter, fossil fuel companies) will suffer any hardship by waiting to raise any federal preemption and constitutional arguments at least until after the State of Michigan decides whether to file any climate lawsuit and, if so, what claims to bring, against which defendants, and where to seek relief.

## CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, this case is fundamentally unripe for adjudication. The claims the United States asserts are not viable under binding ripeness law, and no exigency exists that would merit re-interpreting the plain text of Article III of the U.S. Constitution and decades of caselaw applying the case or controversy requirement.  Michigan therefore respectfully requests that the Court dismiss the Amended Complaint for lack of subject-matter jurisdiction and to award any other relief, including attorney's fees and costs, that the Court deems appropriate.

Respectfully submitted,

/s/ Richard S. Kuhl
Richard S. Kuhl (P42042)
Assistant Attorney General
Attorney for Defendants
Michigan Department of Attorney General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
KuhlR@michigan.gov

David M. Uhlmann
D.C. Bar No. 428216
Special Assistant Attorney General
Attorney for Defendants
Marten Law, LLP
1747 Pennsylvania Avenue NW
Suite 1250
Washington, DC 20006
(202) 642-3648
duhlmann@martenlaw.com

Dated:  July 31, 2025

## CERTIFICATE OF COMPLIANCE

This memorandum complies with the word limit of W.D. Mich. LCivR 7.3(b)(i) because, excluding the parts exempted by W.D. Mich. LCivR 7.3(b)(i), it contains 5,106 words.  The word count was generated using Microsoft Word for Microsoft 365 MSO Version 2505.

/s/ Richard S. Kuhl
Richard S. Kuhl (P42042)
Assistant Attorney General
Attorney for Defendants
Michigan Department of Attorney General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
KuhlR@michigan.gov