## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) ) | Case No. 1:25-cv-496-JMB-SJB |
| *Plaintiff*, | ) ) ) | Hon. Jane M. Beckering |
| v. | ) ) | |
| STATE OF MICHIGAN; GRETCHEN WHITMER, in her official Capacity as Governor of Michigan; and DANA NESSEL, in her official capacity As Michigan Attorney General | ) ) ) ) ) | **ORAL ARGUMENT REQUESTED** |
| *Defendants.* | ) ) ) ) | |

## THE UNITED STATES' MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 3

I.   Federal Law Governs Greenhouse Gases and Interstate Pollution,
     Balancing Environmental Protection with Other National Interests ............. 3

II.  States and Municipalities, Including Those Represented by Michigan's
     Counsel, Bring Dozens of "Climate Change" Lawsuits ................................... 6

III. Although Michigan Has Minimal Fossil Fuel Production, It Hires
     Experienced Counsel to Bring "Climate Change Litigation" Against the
     "Fossil Fuel Industry" for Alleged Global Climate Harms .............................. 8

IV.  The United States Sues and, Forfeiting All Other Arguments, Michigan
     Moves To Dismiss on the Sole Ground That This Suit Is Unripe .................. 10

STANDARD OF REVIEW ..................................................................................... 12

ARGUMENT ........................................................................................................... 14

I.   Michigan's Threatened Climate Suit Arises in a Decade-Long "Concrete
     Factual Context," and the Dispute Over the State-Law Claims Is "Likely
     To Come to Pass" ............................................................................................ 14

II.  The United States' Purely Legal Claims are Fit for Judicial Review and
     Deferring Review Now Would Impose Significant Hardship ......................... 25

CONCLUSION ....................................................................................................... 32

# TABLE OF AUTHORITIES

## CASES

*Abbott v. Perez,*
    585 U.S. 579 (2018) .................................................. 31

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,*
    458 U.S. 592 (1982) .................................................. 27

*Am. Elec. Power Co. (AEP) v. Connecticut,*
    564 U.S. 410 (2011) ............................................... 3, 4, 5

*Ameron, Inc. v. United States Army Corps of Eng'rs,*
    809 F.2d 979 (3d Cir. 1986) ...................................... 28

*Anne Arundel County v. BP plc, et al.,*
    No. C-02-CV-21-000565 (Md. Cir. Ct. Jan. 23, 2025) ..................... 6, 16

*Airline Pros. Ass'n of Int'l Bhd. of Teamsters, Loc. Union No. 1224,*
    *AFL-CIO v. Airborne, Inc.,* 332 F.3d 983 (6th Cir. 2003) ................... 28

*Baaghil v. Miller,*
    1 F.4th 427 (6th Cir. 2021) ....................................... 24

*Bailey v. City of Ann Arbor,*
    860 F.3d 382 (6th Cir. 2017) ...................................... 8

*Banks v. Alexander,*
    294 Fed. App'x 221 (6th Cir. 2008) ................................ 16

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .............................................. 13

*Berry v. Schmitt,*
    688 F.3d 290 (6th Cir. 2012) ..................................... 20

*BMW of N. Am., Inc. v. Gore,*
    517 U.S. 559 (1996) .............................................. 15

*Buck v. Gorden,*
    429 F. Supp. 3d 447 (W.D. Mich. 2019) ............................. 12

iii

*Buckley v. Valeo,*
    424 U.S. 1 (1976) ................................................................................ 28

*Bucks County v. BP P.L.C.,* No. 2024-1836,
    2025 WL 1484203 (Pa. Com. Pl. May 16, 2025) .............................. *passim*

*Carman v. Yellen,*
    112 F.4th 386 (6th Cir. 2024) ........................................................ 26, 28

*Christian Healthcare Centers, Inc. v. Nessel,*
    117 F.4th 826 (6th Cir. 2024) ........................................................ *passim*

*City & Cnty. of Honolulu* v. *Sunoco LP,*
    No. 1CCV-20-380 (Haw. Cir. Ct.) ......................................................... 6

*City of Annapolis v. BP plc, et al.,*
    No. C-02-CV-000250 (Md. Cir. Ct. Jan. 23, 2025) ........................... 6, 16

*City of Charleston v. Brabham Oil Co.,* No. 2020-CP-10-03975,
    2025 WL 2269770 (S.C. Ct. Com. Pl. Aug. 6, 2025) ................... 7, 16, 27

*City of Chicago* v. *BP p.l.c.,*
    No. 2024CH1024 (Ill. Cir. Ct.) .............................................................. 6

*City of Hoboken* v. *Exxon Mobil Corp.,*
    No. HUD-L-3179-20 (N.J. Super. Ct.) ................................................... 6

*City of Oakland v. BP plc, et al.,*
    325 F. Supp. 3d 1017 (N.D. Cal. 2018) ............................................... 16

*City of New York* v. *BP p.l.c.,*
    No. 18-cv-182 (S.D.N.Y.) ....................................................................... 6

*City of New York v. Chevron Corp.,*
    993 F.3d 81 (2d Cir. 2021) ............................................................ *passim*

*City of New York v. Exxon Mobil Corp.,*
    *et al.*, 2025 WL 209843 (N.Y. Sup. Ct. Jan. 14, 2025) ......................... 16

*Cnty. of Maui* v. *Sunoco LP,*
    No. 2CCV-20-283 (Haw. Cir. Ct.) .......................................................... 6

*Cnty. of Multnomah* v. *Exxon Mobil Corp.,*
    No. 23-cv-25164 (Or. Cir. Ct.) ............................................................... 7

iv

*Commonwealth of Massachusetts v. Exxon Mobil Corp.*,
    No. 1984-cv-033333 (Suffolk Sup. Ct. Mass.) ....................................................... 7

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ...................................................................................... 31

*Delaware* v. *BP Am. Inc.*,
    No. N20C-09-097-EMD-CCLD (Del. Super. Ct.) ................................................. 7, 8

*Doe v. Univ. of Mich.*,
    78 F.4th 929 (6th Cir. 2023) .......................................................................... 24

*Ex Parte Young*,
    209 U.S. 123 (1908) ...................................................................................... 22

*Fed. Election Comm'n v. Cruz*,
    596 U.S. 289 (2022) ............................................................................ 2, 13, 14

*Fischer v. Thomas*,
    52 F.4th 303 (6th Cir. 2022)........................................................................... 29

*Forestry Ass'n, Inc. v. Sierra Club*,
    523 U.S. 726 (1998) ...................................................................................... 31

*Google, Inc. v. Hood*,
    822 F.3d 212 (5th Cir. 2016) .......................................................................... 31

*Hawaii* v. *BP p.l.c.*,
    No. 1CCV-25-717 (Haw. Cir. Ct.) .................................................................. 7, 8

*Hill v Snyder*,
    878 F.3d 193 (6th Cir. 2017) .......................................................................... 26

*Illinois v. City of Milwaukee*,
    406 U.S. 91 (1972) .......................................................................................... 4

*In re Fuel Indus. Climate Cases*,
    No. S288664 (Cal.) .......................................................................................... 6

*Int'l Paper Co. v. Ouellette*,
    479 U.S. 481 (1987) ................................................................................ 4, 15, 21

*Jones v. Coleman,*
    848 F.3d 744 (6th Cir. 2017)........................................................................ 30

*King County* v. *BP p.l.c.,*
    No. 18-2-11859-0 (Wash. Super. Ct.) ...................................................... 6, 7

*Kiser v. Reitz,*
    765 F.3d 601 (6th Cir. 2014) ...................................................................... 25

*Kurns v. R.R. Friction Prods. Corp.,*
    565 U.S. 625 (2012) .................................................................................... 15

*Logsdon v. Hains,*
    492 F.3d 334 (6th Cir. 2007) ...................................................................... 13

*Lujan v. Defenders of Wildlife,*
    504 US 555 (1992) ................................................................................. 13, 31

*Maine* v. *BP p.l.c.,*
    No. PORSC-CV24-442 (Me. Super. Ct.) .................................................. 7, 8

*Maryland Casualty v. Pac. Coal & Oil Co.,*
    312 U.S. 270 (1941) .................................................................................... 17

*Mayor and City Council of Baltimore v. BP plc, et al.,*
    No. 24-C-18-004219 (Md. Cir. Ct. July 10, 2024)................................... 6, 16

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007) .................................................................................... 17

*Midwest Title Loans, Inc. v. Ripley,* 616 F. Supp. 2d 897 (S.D. Ind. 2009),
    *aff'd sub nom. Midwest Title Loans, Inc. v. Mills,* 593 F.3d 660 (7th Cir. 2010) .28

*Miller v. City of Wickliffe,*
    852 F.3d 497 (6th Cir. 2017) ...................................................................... 13

*Minnesota* v. *Am. Petroleum Inst.,*
    No. 62-CV-20-3837 (Minn. Dist. Ct.) ........................................................ 7

*Morales v. Trans World Airlines, Inc.,*
    504 U.S. 374 (1992) .................................................................................... 19

*Mun. of Bayamón* v. *Exxon Mobil Corp.,*
    No. 22-cv-1550 (D.P.R.) ............................................................................. 7

*Mun. of San Juan* v. *Exxon Mobil Corp.*,
No. 23-cv-1608 (D.P.R.) ............................................................................ 7

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
538 U.S. 803 (2023) ................................................................................. 31

*Nebraska Pub. Power Dist. v. MidAmerican Energy Co.*,
234 F.3d 1032 (8th Cir. 2000) ................................................................ 29

*New Heights Farm I, LLC v. Great Am. Ins.*,
119 F.4th 455 (6th Cir. 2024) ........................................................... 13, 17

*Ohio Adult Video Ass'n v. U.S. Dep't of Just.*,
71 F.3d 563 (6th Cir. 1995) ..................................................................... 31

*Overdrive Inc. v. Open E-Book Forum*,
986 F.3d 954, 958 (6th Cir. 2021) ..................................................... 24, 25

*Pac. Capital Bank, N.A. v. Connecticut*,
542 F.3d 341 (2d Cir. 2008) .................................................................... 32

*Pacific Gas and Elec. Co. v. State Energy Resources Conserv. & Dev. Com'n*,
461 U.S. 190 (1983) ................................................................................. 29

*Philip Morris Inc. v. Harshbarger*,
946 F. Supp. 1067 (D. Mass. 1996) ........................................................ 22

*Platkin* v. *Exxon Mobil Corp.*,
No. MER-L-1797-22 (N.J. Super. Ct. Law. Div., Mercer Cnty.) ......... 6, 7

*R.R. Comm'n of Tex. v. Pullman Co.*,
312 U.S. 496 (1941) ........................................................................... 12, 30

*Rhode Island* v. *Shell Oil Prods. Co.*,
No. PC-2018-4716 (R.I. Super. Ct.) .......................................................... 7

*Saginaw County v. STAT Emergency Med. Servs.*,
946 F.3d 951 (6th Cir. 2020) ............................................................. 23, 24

*Shaw v. Delta Air Lines, Inc.*,
463 U.S. 85 (1983) ................................................................................... 22

*Sherwin-Williams Company v. County of Delaware*,
968 F.3d 264 (3d. Cir. 2020) ...................................................... 22, 23, 31

*State ex rel. Jennings v. BP Am. Inc.,*
    *et al.*, 2024 WL 98888 (Del. Super. Ct. Jan. 9, 2024).............................................. 16

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ..................................................................................... *passim*

*Sys. Application & Techs., Inc. v. United States,*
    691 F.3d 1374 (Fed. Cir. 2012) ............................................................................ 28

*Tanner-Brown v. Haaland,*
    105 F.4th 437 (D.C. Cir. 2024)................................................................. 13, 14, 22

*Tex. Indus., Inc. v. Radcliff Materials, Inc.,*
    451 U.S. 630 (1981) ....................................................................................... 3, 29

*Town of Carrboro* v. *Duke Energy Corp.,*
    No. 24CV3385- 670 (N.C. Super. Ct.)..................................................................... 6

*Travelers Ins. v. Obusek,*
    72 F.3d 1148 (3d Cir. 1995)................................................................................. 18

*U.S. ex rel. Dingle v. BioPort Corp.,*
    270 F. Supp. 2d 968 (W.D. Mich. 2003) ................................................................. 8

*United States Dep't of Treasury v. Nat'l Treasury Emps. Union,*
    783 F. Supp. 3d 991 (E.D. Ky. May 20, 2025) ...................................................... 24

*United States v. Michigan,*
    635 F. Supp. 944 (W.D. Mich. 1985), *aff'd*, 851 F.2d 803 (6th Cir. 1988).......... 3, 30

*United States v. New York et al.,*
    2025 WL 2208941 (S.D.N.Y. Aug. 4, 2025) .......................................................... 26

*United States v. Supreme Court of New Mexico,*
    839 F.3d 888 (10th Cir. 2016) ............................................................................. 17

*United States v. Texas,*
    719 F. Supp. 3d 640 (W.D. Tex. 2024) ...................................................... 23, 28, 30

*United States v. West Virginia,*
    295 U.S. 463 (1935) ........................................................................................... 24

*United States v. Vermont,*
    No. 2:25-cv-00463 (D. Vt. June 30, 2025) (ECF 23)............................................... 26

*Util. Air Regul. Grp. v. EPA,*
    573 U.S. 302 (2014) ................................................................ 4

*Vermont Agency of Natural Resources v. United States ex rel. Stevens,*
    529 U.S. 765 (2000) ............................................................... 14

*Virginia v. Am. Booksellers Ass'n, Inc.,*
    484 U.S. 383 (1988) ............................................................... 18

*Warth v. Seldin,*
    422 U.S. 490 (1975) ............................................................... 14


**STATUTES**

42 U.S.C. § 7401 *et seq.*............................................................. 4, 11

42 U.S.C. § 7411(a)(1) ................................................................ 5

Pub. L. No. 100-204,
    101 Stat. 1331 (1987) (*reprinted at* 15 U.S.C. § 2901 note) .................... 6


**RULE**

Federal Rule of Civil Procedure 12(b)(1) .................................... 1, 8, 11, 12


**OTHER AUTHORITIES**

13B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper,
    *Federal Practice and Procedure* § 3532.3 (3d ed.).......................... 13

*Protecting American Energy From State Overreach,*
    Exec. Order No. 14260, 90 Fed. Reg. 15,513 (Apr. 8, 2025) ....................... 5, 30, 32

Senate-ratified United Nations Framework Convention on Climate Change,
    May 9, 1992, S. Treaty Doc. No. 102-38, 1771 U.N.T.S. 107 ...................... 6, 29

S. Res. 98, 105th Cong., 1st Sess. (July 25, 1997) ....................................... 6

Framework Convention, Kyoto Protocol (Dec. 10, 1997)37 I.L.M. 22 (1998) ............. 6

## INTRODUCTION

Defendants (collectively, Michigan) move to dismiss this lawsuit under Federal Rule of Civil Procedure 12(b)(1) on "only one" issue: ripeness. ECF 11, Michigan's Memorandum ("Mem.") PageID.142. To assess ripeness here, the Court asks whether the United States has plausibly alleged "a credible threat" that Michigan's state-law claims against energy producers for alleged harms due to global greenhouse gas emissions are likely to come to pass. *Christian Healthcare Centers, Inc. v. Nessel*, 117 F.4th 826, 841 n.2 (6th Cir. 2024). Michigan contends that the United States has not met this standard even though Michigan's Attorney General, Dana Nessel:

- Publicly announced her intent to "pursue litigation related to the climate change impacts caused by the fossil fuel industry," ECF 8, Amended Complaint ("AC") Ex. 1, PageID.94;

- Requested proposals from law firms "to pursue litigation related to the climate change impacts caused by the fossil fuel industry," *id.* Ex. 2, PageID.99;

- Issued a detailed statement of work targeting energy producers operating "in and outside of Michigan" and seeking to remedy alleged harms caused by "the global climate crisis," including injuries to "[t]he environment in and around Michigan," *id.* Ex. 3, PageID.103–04;

- Hired three experienced climate change law firms to "vigorously pursue[] and prepare[] for filing" climate change claims, *id.* Ex. 4 § 5.4, PageID.112; and

- Refused to disavow her intent to bring state-law claims in state court for global greenhouse gas emissions, even when given an opportunity to "end this lawsuit" in exchange for such a disavowal, *id.* ¶ 30 n.2, PageID.73.

Indeed, far from disavowing Michigan's plans, Attorney General Nessel proclaimed in response to the United States' complaint: "I remain undeterred in my intention to file this [climate change] lawsuit the president and his big oil donors so fear." *Justice department sues Michigan and Hawaii over climate suits against big*

1

*oil*, The Guardian (May 1, 2025), https://perma.cc/VVV9-ZHS4; *see also* AC Ex. 6, PageID.128 (similar).

According to Michigan, the United States is powerless to vindicate its sovereign, parens patriae, and proprietary interests until Michigan files its climate change lawsuit. But the filing of an "actual . . . enforcement action is not a prerequisite to challenging" an unlawful lawsuit. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). What is required is a "credible threat of enforcement." *Id.* at 159. Considering the surrounding factual circumstances of climate change litigation and Michigan's conduct here, the United States comfortably satisfies that standard.

Michigan invites this Court to make believe that its threatened suit *might* not raise the sorts of claims that the United States argues are preempted: state-law claims for damages related to global climate change, whether sounding in nuisance, consumer protection, or some other state law. But Michigan offers no reason to expect that theoretical possibility, and there is none. *Cf.* Mem. PageID.156 (acknowledging allegation that Michigan will sue "in state court based on state law claims . . . may or [may] not prove accurate"). "Artful pleading" of state-law claims cannot transform Michigan's coming "complaint into anything other than a suit over global greenhouse gas emissions." *City of New York v. Chevron Corp.*, 993 F.3d 81, 91 (2d Cir. 2021). It thus does not matter what specific state-law claims Michigan will assert in its climate change litigation. All of those claims would be preempted under the United States' theory of the case, *see id.*, which this Court must "accept as valid" for purposes of Michigan's motion to dismiss. *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 298 (2022).

2

Deferring judicial review of the purely legal questions here would impose continuing hardship on the United States. The federal government sued in federal court to vindicate its federal interests in the supremacy of federal law. "The United States' right to bring such [an] action[] in the district court[] as sovereign to protect its interests and policies is well established." *United States v. Michigan*, 635 F. Supp. 944, 946 (W.D. Mich. 1985), *aff'd*, 851 F.2d 803 (6th Cir. 1988). Michigan thus fails to persuade by twice suggesting that Michigan "state courts [should] have the opportunity" to adjudicate its forthcoming climate change litigation. Mem. PageID.140 n.1, PageID.157. And Michigan's threatened suit even now undermines the federal government's ability to speak with "one voice" in its commercial and political relations with foreign governments on climate, energy, and related issues. AC ¶ 86, PageID.88.

For these and other reasons articulated below, the United States' claims are ripe, and the Court should deny Michigan's motion to dismiss.

## BACKGROUND

### I. Federal Law Governs Greenhouse Gases and Interstate Pollution, Balancing Environmental Protection with Other National Interests

**A**. The Supreme Court has long recognized that "our federal system does not permit [certain] controvers[ies] to be resolved under state law." *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981). This includes areas in which "the interstate or international nature of the controversy makes it inappropriate for state law to control." *Id*. For these subjects, the "basic scheme of the Constitution . . . demands" a federal rule of decision. *Am. Elec. Power Co. (AEP) v. Connecticut*, 564 U.S. 410, 421 (2011).

This is why, since the Founding, federal law exclusively has applied to disputes involving cross-boundary pollution, which implicate "uniquely federal interests," including "the conflicting rights of states and our relations with foreign nations." *City of New York*, 993 F.3d at 90–92. There is no history or tradition of States regulating interstate, much less global, pollution or "climate change." And for good reason: If each State could apply its own law in this area, the result would be "an irrational system of regulation" that "lead[s] to chaotic confrontation between sovereign states" and "uncertainty" over the governing legal standard, as persons would have to comply with the laws "of all states potentially affected by" an otherwise "lawful discharge." *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 496–97 (1987) (quotation marks omitted). Because the structure of our Constitution requires "a uniform rule of decision" for "controvers[ies]" involving interstate pollution, it "demands . . . applying federal law . . . and not the varying . . . law of the individual States." *Illinois v. City of Milwaukee*, 406 U.S. 91, 105 n.6, 107 n.9 (1972). Until Congress acted, interstate pollution was governed by federal common law. *See id.* at 103, 105 n.6; *AEP*, 564 U.S. at 421. That changed in 1963 when Congress enacted (and later amended) the Clean Air Act. *See* 42 U.S.C. § 7401 *et seq.*

The Clean Air Act creates a comprehensive national program for regulating "pollution-generating emissions from both stationary sources, such as factories and powerplants, and moving sources, such as cars, trucks, and aircraft," subject to various statutory standards for regulation that apply to each type of source. *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 308 (2014). Beginning in 1970, Congress vested

4

authority to implement the Clean Air Act in the Environmental Protection Agency ("EPA"). *City of New York*, 993 F.3d at 87.

In determining whether and how to regulate interstate air pollution, EPA must balance other national interests. *See id.* at 93 (recognizing the "careful balance" that must be struck between environmental protection, on the one hand, and "energy production, economic growth, foreign policy, and national security, on the other"). Chief among these interests is ensuring that the Nation maintains a reliable energy supply—an objective that Congress, the Supreme Court, and the President have all emphasized. *See* 42 U.S.C. § 7411(a)(1) (requiring stationary source emission standards to reflect "the cost of achieving such [emissions] reduction and any nonair quality health and environmental impact and energy requirements"); *AEP*, 564 U.S. at 427 (explaining that "the environmental benefit potentially achievable" through regulation must be weighed against "our Nation's energy needs and the possibility of economic disruption"); *Protecting American Energy From State Overreach*, Exec. Order No. 14260, § 1, 90 Fed. Reg. 15,513 (Apr. 8, 2025) (explaining that "[a]n affordable and reliable domestic energy supply" is "essential to the national and economic security of the United States, as well as our foreign policy").

**B**. Because climate change "is a global problem that the United States cannot confront alone," the federal government "has worked cooperatively with foreign governments through diplomatic channels" to address the issue. *City of New York*, 993 F.3d at 88. Congress directed the executive branch to develop a "coordinated national policy on global climate change" through the Global Climate Protection Act, Pub. L.

5

No. 100-204, Title XI, § 1103, 101 Stat. 1331, 1407–09 (1987) (reprinted at 15 U.S.C. § 2901 note), and the federal government has been carefully coordinating and refining that policy for decades. Since 1992, for example, the United States has been party to the Senate-ratified United Nations Framework Convention on Climate Change, S. Treaty Doc. No. 102-38, 1771 U.N.T.S. 107, which creates a framework for international cooperation to address greenhouse gas emissions.

At the same time, the United States has rejected more restrictive measures, recognizing that regulation does not always serve national interests. The United States is not, for example, party to the Kyoto Protocol of 1997, *see* Framework Convention, Kyoto Protocol (Dec. 10, 1997), 37 I.L.M. 22 (1998), which sets binding greenhouse gas emission reduction targets on certain Framework Convention parties, S. Res. 98, 105th Cong., 1st Sess. (July 25, 1997); *see also* AC ¶¶ 89–104, PageID.89–91 (describing foreign affairs).

## II. States and Municipalities, Including Those Represented by Michigan's Counsel, Bring Dozens of "Climate Change" Lawsuits

For nearly a decade, States and municipalities have brought dozens of cases that seek to use state law to remedy the allegedly adverse effects of global greenhouse gases emissions from energy producers.[1] The plaintiffs in these cases bring materially

---

[1] *See, e.g., In re Fuel Indus. Climate Cases*, No. S288664 (Cal.); *City & Cnty. of Honolulu* v. *Sunoco LP*, No. 1CCV-20-380 (Haw. Cir. Ct.); *Cnty. of Maui* v. *Sunoco LP*, No. 2CCV-20-283 (Haw. Cir. Ct.); *City of Chicago* v. *BP p.l.c.*, No. 2024CH1024 (Ill. Cir. Ct.); *Mayor & City Council of Baltimore* v. *BP p.l.c.*, No. 24-C-18-4219 (Md. Cir. Ct.); *Anne Arundel County* v. *BP p.l.c.*, No. 02-CV-21-565 (Md. Cir. Ct.); *City of Annapolis* v. *BP p.l.c.*, No. 02-CV-21-250 (Md. Cir. Ct.); *Platkin* v. *Exxon Mobil Corp.*, No. MER-L-1797-22 (N.J. Super. Ct.); *City of Hoboken* v. *Exxon Mobil Corp.*, No. HUD-L-3179-20 (N.J. Super. Ct.); *City of New York* v. *BP p.l.c.*, No. 18-cv-182 (S.D.N.Y.); *Town of Carrboro* v. *Duke Energy Corp.*, No. 24CV3385- 670 (N.C.

identical allegations that the worldwide production, sale, or promotion of fossil fuels led to the emission of greenhouse gases and thereby contributed to global climate change. The lawsuits share a common feature: plaintiffs use state statutes and state common law to bring claims against global energy producers rather than using federal law. By framing their lawsuits under state consumer protection statutes or state common law claims, plaintiffs attempt to sidestep federal preemption arguments.

A repeat player in this litigation is the law firm Sher Edling LLP. This firm "represents states, tribes, and local governments in lawsuits to hold fossil fuel industry defendants accountable" for their alleged "deception about the science of climate change and the role their products play in causing it." AC ¶ 22, PageID.70 (citing Sher Edling LLP, *Climate Damage and Deception*, https://perma.cc/MA84-TNVZ). The firm has filed the same type of materially identical lawsuit dozens of times, including for Massachusetts, Delaware, Hawaii, Maine, Minnesota, Rhode Island, New Jersey, and more. *See id.*[2] Its complaints for the States—all of which are filed against major energy producers (*e.g.*, Exxon Mobil Corporation)—allege materially similar state-law claims. *See, e.g., Delaware*, No. N20C-09-97, Compl. ¶ 21h (alleging that

---

Super. Ct.); *Cnty. of Multnomah* v. *Exxon Mobil Corp.*, No. 23-cv-25164 (Or. Cir. Ct.); *Bucks County* v. *BP p.l.c.*, No. 2024-1836 (Pa. C.P.); *City of Charleston* v. *Brabham Oil Co.*, No. 2020-CP-10-3975 (S.C.C.P.); *King County* v. *BP p.l.c.*, No. 18-2-11859-0 (Wash. Super. Ct.); *Mun. of Bayamón* v. *Exxon Mobil Corp.*, No. 22-cv-1550 (D.P.R.); *Mun. of San Juan* v. *Exxon Mobil Corp.*, No. 23-cv-1608 (D.P.R.).

[2] *See, e.g., Commonwealth of Massachusetts v. Exxon Mobil Corp.*, No. 1984-cv-033333 (Suffolk Sup. Ct. Mass.); *Delaware* v. *BP Am. Inc.*, No. N20C-09-097-EMD-CCLD (Del. Super. Ct.); *Hawaii* v. *BP p.l.c.*, No. 1CCV-25-717 (Haw. Cir. Ct.); *Maine* v. *BP p.l.c.*, No. PORSC-CV24-442 (Me. Super. Ct.); *Minnesota* v. *Am. Petroleum Inst.*, No. 62-CV-20-3837 (Minn. Dist. Ct.); *Rhode Island* v. *Shell Oil Prods. Co.*, No. PC-2018-4716 (R.I. Super. Ct.); *Platkin, et al. v. Exxon Mobil Corp.*, No. MER-L-001797-22 (Sup. Ct. NJ Law Div., Mercer Cnty.).

producers' advertisements "contained false or misleading statements"); *Hawaii*, No. 1CCV-25-717, Compl. ¶ 37i (same); *Maine*, No. PORSC-CV24-442, Compl. ¶ 33k (same). The firm has also asserted state-law claims for negligence, trespass, nuisance, products liability, and public trust. *See* AC ¶ 22, PageID.70 (hyperlinking cases).

## III. Although Michigan Has Minimal Fossil Fuel Production, It Hires Experienced Counsel to Bring "Climate Change Litigation" Against the "Fossil Fuel Industry" for Alleged Global Climate Harms

**A**. "Michigan's crude oil reserves and production are modest." U.S. Energy Information Administration, U.S. Dep't of Energy, *Michigan* (Oct. 17, 2024), https://perma.cc/PH8E-JX2Y.[3] Its "crude oil reserves and production each account for 0.1% of the nation's total." *Id*. Oil production from the State peaked in 1979 but, since then, "Michigan's crude oil output has generally declined and was about 4.8 million barrels in 2023." *Id*. It now has only one crude oil refinery located near Detroit. *Id*. As for other fossil fuels, Michigan has "no active coal mines" and "holds about 0.2% of U.S. total proved [natural gas] reserves." *Id*. Its natural gas production, meanwhile, makes up merely "0.2% of total U.S. production." *Id*. All told, Michigan has minimal fossil fuel production and minimal greenhouse gas emissions. *See id*.

---

[3] "The U.S. Energy Information Administration (EIA) is the statistical and analytical agency within the U.S. Department of Energy.  EIA collects, analyzes, and disseminates independent and impartial energy information to promote sound policymaking, efficient markets, and public understanding of energy and its interaction with the economy and the environment." U.S. Energy Info. Admin., About EIA, Mission and Overview, https://perma.cc/WM39-5E4W. EIA's "data, analyses, and forecasts are independent of approval by any other officer or employee of the U.S. government." *Id*. "[P]ublic records and government documents available from reliable sources on the Internet" are judicially noticeable, *U.S. ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003), and are properly considered in response to a Rule 12(b)(1) motion, *see Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017).

**B**. In May 2024, Michigan issued a request for proposal for law firms "to pursue litigation related to the climate change impacts caused by the fossil fuel industry." AC ¶ 15, PageID.68. Consistent with the climate change cases described above, the request requires "attorneys and law firms with experience and interest in pursuing constitutional, statutory, tort and other applicable common law claims against the fossil fuel industry." *Id*. Ex. 1, PageID.94; *see also id*. Ex. 2, PageID.99 (same).

Michigan's statement of work expands on the planned lawsuit. In it, Michigan requires counsel to bring "claims against the fossil fuel industry for knowingly causing adverse impacts on climate, for deceiving the public about the climate changes that they knew their products would cause, and for the costs" Michigan has spent or will "spend to address and recover from the impacts of climate change." *Id*. Ex. 3 § 1, PageID.103.

The concerns Michigan identifies go well beyond alleged in-state "impacts." *Id*. Michigan asserts that "[t]he impacts of climate change" include "catastrophic and [potentially] irreversible consequences" ranging from "atmospheric and ocean warming" to "melting polar ice caps and glaciers" as well as "sea level rise" and "extreme and volatile weather." *Id*. § 2, PageID.103–04. Michigan lays blame for these negative effects not on any entity in the State but on "the fossil fuel industry." *Id*. The statement of work contemplates that climate change counsel will "examine, investigate, recommend, *and litigate*" claims "against fossil fuel industry defendants including but not limited to extractors, producers, transporters, refiners, manufacturers, distributors, promoters, marketers, and/or sellers of fossil fuel products." *Id*. § 3,

PageID.104 (emphasis added); *see also id.* § 2, PageID.104 (requiring counsel to "determin[e] what claims will be brought, draft[] the complaints (as appropriate), conduct[] affirmative and defensive discovery, tak[e] and defend[] depositions, [undertake] motion practice, and prepar[e] for and conduct[] any trials").

After receiving proposals, in September 2024, Michigan hired three law firms to bring "climate change litigation" against the fossil fuel industry. *Id.* Ex. 4, PageID.107. One of the firms Michigan hired is Sher Edling LLP—the firm that has already filed the same materially identical lawsuit dozens of times, including on behalf of seven other States. The contract between Michigan and the law firms requires counsel to "vigorously pursue[] and prepare[] for filing" "[a]ll claims." *Id.* § 5.4, PageID.112. And Michigan contemplates that its climate change lawsuit could exceed $150 million dollars in recoveries. *Id.* Ex. 5, PageID.122.

## IV. The United States Sues and, Forfeiting All Other Arguments, Michigan Moves To Dismiss on the Sole Ground That This Suit Is Unripe

**A**. In April 2025, the United States filed a complaint against Michigan for declaratory and injunctive relief to prevent it from using state-law claims to regulate out-of-state greenhouse gas emissions. *See* ECF 1 at PageID.22. The United States alleged that Michigan's impending "state law claims are preempted" by federal law because they would "impermissibly regulate out-of-state greenhouse gas emissions" and obstruct federal law. *Id.* ¶ 31. Further, "Michigan's state law claims violate the Constitution's structure and principles of due process by seeking to impose economic sanctions on fossil fuel businesses for economic activities that occurred primarily in

10

other States and around the world." *Id*. ¶ 50. The United States asserted that any state-law claims seeking damages from the fossil-fuel industry for climate change are preempted by or violate the Clean Air Act, 42 U.S.C. § 7401, *et seq.* (Count I), the constitutional bar on extraterritorial regulation (Count II), the Interstate Commerce Clause (Count III), the Foreign Commerce Clause (Count IV), and the Foreign Affairs Doctrine (Count V). The United States' suit does not seek to bar Michigan from asserting federal claims related to its alleged harms.

In June 2025, Michigan moved to dismiss the complaint under Rule 12(b)(1), contending that the United States' claims are unripe because it had not yet filed its lawsuit. *See* ECF 6 & 7. That same day, Attorney General Nessel called the United States' lawsuit an "attempt to intimidate [her] office and deter [Michigan] from holding Big Oil accountable." AC Ex. 6, PageID.128. She also declared: "I remain undeterred in my intent to pursue justice on behalf of Michigan residents." *Id.*; *see also supra* The Guardian ("I remain undeterred in my intention to file this lawsuit.").

Because Attorney General Nessel remained "undeterred" in her intent to file a climate change lawsuit, the United States amended its complaint. The United States asserted the same claims as before and requested a declaration that Michigan cannot use state-law claims to regulate out-of-state greenhouse gas emissions. AC at PageID.92. The United States also requested a permanent injunction to enjoin such state-law claims. *Id*. The Amended Complaint added more allegations about Michigan's imminent climate change litigation. *See id*. ¶¶ 14–30, PageID.68–73. Finally, the United States offered to "end this lawsuit" if Michigan agreed to "disavow[] any

11

intent to bring state-law claims against fossil fuel companies for alleged harms from greenhouse-gas emissions and terminat[e] its Climate Change litigation efforts." *Id.* PageID.73 n.2.[4]

**B.** Michigan declined the offer. It instead moved to dismiss the Amended Complaint on "only one" issue: "subject-matter jurisdiction under Rule 12(b)(1) because," in its view, "this case remains unripe for adjudication." Mem. PageID.142.

In support of its motion, Michigan does not deny that it will sue global energy producers under state law for alleged harm related to global climate change. To the contrary, Michigan over and over hints that it will file "suit in state court seeking relief under state law." Mem. PageID.140 n.1 (referencing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941)); *id.* at PageID.156-157.[5]

## STANDARD OF REVIEW

"The doctrines of standing and ripeness 'originate' from the same Article III limitation." *Driehaus*, 573 U.S. at 157 n.5. A case is ripe if it (1) "arise[s] in a concrete

---

[4] The Amended Complaint contains a description of *Buck v. Gorden*, 429 F. Supp. 3d 447 (W.D. Mich. 2019) (Jonker, J.), which Michigan calls an "ad hominem attack on Attorney General Nessel." Mem. PageID.143 (citing AC ¶¶ 24–25, PageID.71). But the United States does not construe Judge Jonker's opinion as leveling a personal attack against her. That opinion and her campaign statements show that she follows through on her public statements with action in court. And here there is no reason to think—and Michigan does not dispute— that she will not follow through on her avowed intent to sue the "fossil fuel industry."

[5] *See also id.* at PageID.152 ("Even if Michigan were to model its case after prior cases brought by Sher Edling[]"); *id.* ("The State may decide to pursue similar climate change-related claims or the State might pursue new legal theories."); *id.* at PageID.154 (arguing no hardship to the United States "until the State of Michigan files any climate claims against private defendants"); *id.* (admitting "the possibility that Michigan may file a lawsuit"); *id.* (feigning "'uncertainty' over Michigan's anticipated lawsuit"); *id.* at PageID.156 ("The United States is convinced that Michigan will file suit in state courts based on state law claims, which may or [may] not prove accurate.").

factual context and concern[s] a dispute that is likely to come to pass," and (2) if deferring review would "impose 'hardship' on the participants in the lawsuit[.]" *New Heights Farm I, LLC v. Great Am. Ins.*, 119 F.4th 455, 460 (6th Cir. 2024).

In the pre-enforcement context, "'the line between Article III standing and ripeness has evaporated' because the doctrines both pose largely 'the same question: have plaintiffs established a credible threat of enforcement?'" *Nessel*, 117 F.4th at 841 n.2 (quoting *Miller v. City of Wickliffe*, 852 F.3d 497, 506 (6th Cir. 2017)).[6]

At the motion to dismiss stage, a plaintiff need only allege facts "plausibly" showing that the dispute is ripe. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Lujan v. Defenders of Wildlife*, 504 US 555, 561 (1992) (standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof"). The court must "construe the plaintiff's complaint liberally, in plaintiff's favor, accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007).

"[W]hen considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim." *Tanner-Brown v. Haaland*, 105 F.4th 437, 445 (D.C. Cir. 2024) (collecting cases). Put differently, courts "must consider standing separately from the merits by assuming that the plaintiff will ultimately prevail on [its] legal theory." *Id.*; *accord Cruz*, 596 U.S. 298 ("For

---

[6] Michigan is wrong to suggest that ripeness has unique rules in only the "First Amendment context." Mem. PageID.156 n.5; *see, e.g.*, *Kentucky v. Yellen*, 54 F.4th 325, 336 (6th Cir. 2022) (applying "credible threat" standard in non-First Amendment case); *see generally* 13B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3532.3 (3d ed.) ("First Amendment rights need not be the only rights accorded special ripeness treatment.").

standing purposes, we accept as valid the merits of [the plaintiff's] legal claims . . . ."); *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (assuming legal theory of complaint).

## ARGUMENT

"It is beyond doubt" that a complaint "asserts an injury to the United States" if it alleges an "injury to [the United States'] sovereignty arising from violation of its laws." *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000). Regulation of interstate pollution is a subject reserved exclusively to federal law, *see supra* Background I, and Michigan injures the United States by threatening to usurp the United States' exclusive federal authority. This case is ripe.

## I.   Michigan's Threatened Climate Suit Arises in a Decade-Long "Concrete Factual Context," and the Dispute Over the State-Law Claims Is "Likely To Come to Pass"

**A.** Michigan argues that this case is unripe because it supposedly rests on "hypothetical and conjectural" events. The State's main argument is that "there are no specific claims" before this Court "to determine whether they are preempted or unconstitutional." Mem. PageID.140. But this case does *not* "hinge on what 'exact theories of liability' Michigan may bring." *Id.* PageID.149. Rather, the United States' legal theory is that *any* state-law claim that Michigan may assert based on global greenhouse gas emissions would be preempted by federal law, which theory this Court must "accept as valid." *Cruz*, 596 U.S. at 298; *Tanner-Brown*, 105 F.4th at 445 ("assuming that the plaintiff will ultimately prevail on her legal theory").[7]

---

[7] To the extent Michigan implies that its forthcoming state-law claims are not preempted, *see* Mem. PageID.152 & n.4 (noting that some claims "have survived

14

The United States maintains that States lack power, both as a constitutional and statutory matter, to use state law to obtain damages for alleged harms from global greenhouse gas emissions or otherwise regulate such emissions. *See* AC PageID.78–85 (Counts I & II). That theory encompasses *all* state-law claims that would effectively regulate greenhouse gas emissions. *See City of New York*, 993 F.3d at 91–92 (explaining that "regulation can be effectively exerted through an award of damages" requested in a lawsuit) (quoting *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625 (2012)); *accord BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 573 n. 17 (1996) ("State power may be exercised as much by a jury's application of a state rule of law in a civil lawsuit as by a statute."). Such state-law claims injure the United States by usurping its exclusive sovereign authority to regulate global greenhouse gas emissions. *See* AC ¶ 7, PageID.66. State-law claims seeking to regulate global greenhouse gas emissions also injure the United States by interfering with its proprietary and parens patriae interests. *Id*.

Michigan cannot artfully plead around the exclusivity of federal law because regulation of global greenhouse gas emissions is "a matter of federal, not state, law." *Ouellette*, 479 U.S. at 488. And "[a]rtful pleading" of state-law claims here cannot transform Michigan's imminent "complaint into anything other than a suit over global greenhouse gas emissions." *City of New York*, 993 F.3d at 91. "It is precisely *because* fossil fuels emit greenhouse gases," *id*., that Michigan seeks to recover over

---

constitutional and preemption arguments, while others have not"), that argument must wait for the merits and is not appropriate to Michigan's ripeness defense.

$150 million in damages against the entire fossil fuel industry. The fact that Michigan is seeking to recover for *global* greenhouse gas emissions is further evident from its statement of work—which specifies that the "purpose" of its climate change litigation is to redress "the global climate crisis." AC Ex. 3 § 2, PageID. 103.

It thus does not matter what specific state-law claims Michigan will plead against energy producers for allegedly "deceiving the public about the climate changes" or for other harms related to greenhouse gases. *Id*. Michigan cannot use *any* state-law claim to regulate global greenhouse gas emissions, whether under trespass, nuisance, negligence, consumer protection, product liability, public trust, or some other state law theory. They all would be preempted. *See Banks v. Alexander*, 294 Fed. App'x 221, 225 (6th Cir. 2008) ("artful pleading cannot defeat preemption"); *City of New York*, 993 F.3d at 91 (same). "[O]ur federal structure" simply "does not allow [Michigan] law, or any State's law, to address" claims for global greenhouse gas emissions. *Bucks County v. BP P.L.C.,* 2025 WL 1484203, at *8 (Pa. Com. Pl. May 16, 2025). A "growing chorus" of state and federal courts have joined this holding.[8]

**B.** Michigan argues that this case is unripe because it is "riddled with contingencies and speculation that impede judicial review," but none of the five

---

[8] *City of Charleston v. Brabham Oil Co.,* 2025 WL 2269770, at *2 (S.C. Ct. Com. Pl. Aug. 6, 2025) (quoting *Bucks*, 2025 WL 1484203, and noting that the "ranks of this chorus are swelling for sound public policy reasons"); *accord Bucks*, 2025 WL 1484203, at *6 (citing *City of New York*, 993 F.3d 81; *City of Oakland v. BP plc, et al.*, 325 F. Supp. 3d 1017 (N.D. Cal. 2018); *State ex rel. Jennings v. BP Am. Inc. et al.*, 2024 WL 98888 (Del. Super. Ct. Jan. 9, 2024); *Mayor and City Council of Baltimore v. BP plc, et al.*, No. 24-C-18-004219 (Md. Cir. Ct. July 10, 2024); *City of Annapolis v. BP plc et al.*, No. C-02-CV-000250 (Md. Cir. Ct. Jan. 23, 2025); *Anne Arundel County v. BP plc, et al.*, No. C-02-CV-21-000565 (Md. Cir. Ct. Jan. 23, 2025); *City of New York v. Exxon Mobil Corp., et al.*, 2025 WL 209843 (N.Y. Sup. Ct. Jan. 14, 2025)).

16

contingencies Michigan identifies prevents this suit from proceeding. Mem. PageID.147–48, 53.

At the outset, the mere presence of contingent events is not the test for determining whether a case presents a justiciable controversy. *See, e.g.*, *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 902–04 (10th Cir. 2016) (rejecting asserted "contingencies" to challenge ripeness). The correct standard is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). This standard applies even where a dispute hinges on actual contingencies. *See, e.g.*, *Maryland Casualty v. Pac. Coal & Oil Co.*, 312 U.S. 270, 272–73 (1941) (holding claim justiciable *because of the possibility* that a party could prevail in his separate state court lawsuit and then sue the insurer later). The mere existence of contingencies is thus no bar to federal jurisdiction.

In any case, none of the five contingencies that Michigan raises alters the fact that this case presents a ripe controversy. *See* Mem. PageID.147–48.

***First***, this case is ripe now because Michigan's actions make clear that its climate change lawsuit is "likely to come to pass." *New Heights*, 119 F.4th at 460; *see* Mem. PageID.147 (arguing that ripeness turns on whether Michigan "choos[es] to proceed and fil[e] a climate lawsuit"). In arguing that this case is unripe because it has not yet filed its climate change lawsuit, Michigan fails to grapple with binding pre-enforcement case law. The Supreme Court is "not troubled by the pre-

17

enforcement nature of [a] suit" that challenges something "before" it becomes "effective"—in this case, the filing of Michigan's complaint. *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392–93 (1988); *see also Travelers Ins. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995) (noting no need for "mathematical certainty" as "such barriers would eviscerate the Declaratory Judgment Act and render" its relief "illusory").

All that is necessary to present a justiciable controversy in a pre-enforcement challenge are plausible allegations of a "credible threat" of action. *Driehaus*, 573 U.S. at 159; *accord Nessel*, 117 F.4th at 841 n.2 (same). The Sixth Circuit applied the "credible threat" standard in *Nessel* where it weighed several factors to determine whether the plaintiff presented a justiciable controversy: (1) writings regarding the "specific conduct" at issue, (2) "history," (3) the ease of or likelihood of bringing the challenged action, and (4) the "defendant's refusal to disavow" the challenged conduct. *Id.* at 848. "At bottom," the court summarized, the "inquiry distills to whether 'surrounding factual circumstances' plausibly suggest a credible" threat that the challenged conduct will likely come to pass. *Id.*

The United States' allegations satisfy each of the four pre-enforcement factors to establish a "credible threat" that Michigan will file a climate change lawsuit containing state-law claims for global greenhouse gas emissions. *Id.*

To begin, Michigan's own conduct exposes its imminent intent to file "litigation related to the climate change impacts caused by the fossil fuel industry." AC ¶ 15, PageID.68. Michigan, for example, issued a request for proposal for law firms—"with experience and interest in pursuing . . . claims against the fossil fuel industry"—to

18

bring "Climate Change Litigation." AC Ex. 1, PageID.94; *id.* Ex. 2, PageID.99. And Michigan executed a contract for attorneys to "vigorously pursue[] and prepare[] for filing" such "claims." *Id.* Ex. 4 § 5.4, PageID.112; *see Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (concluding that "injunctive relief was available" when state attorneys general "had made clear" their intention to act).

Michigan's planned lawsuit is also consistent with a nearly ten-year history of climate change litigation and Michigan's own conduct to prepare its lawsuit. This history includes dozens of materially identical cases alleging—under the law of the forum state—that the worldwide production, sale, or promotion of fossil fuels led to the emission of harmful greenhouse gases. *See supra* Background II. Michigan retained three "experienced" law firms to bring "Climate Change Litigation." *See id. supra* II–III. One of those firms has a history of filing materially identical lawsuits dozens of times, including on behalf of seven States, making similar state-law claims seeking to hold energy producers liable for out-of-state greenhouse gas emissions. *Id.*; *see also* AC ¶ 22, PageID.70 (hyperlinking lawsuits); Mem. PageID.152 n.4 (listing only state-law claims filed by its counsel). This context "is good evidence that the threat of" Michigan filing a complaint with state-law claims for global greenhouse gas emissions "is not 'chimerical.'" *Driehaus*, 573 U.S. at 164.

The "credibility of [the] threat" to file suit is further "bolstered by the fact that authority to file a complaint" is completely within Michigan's control. *Id.* The United States has plausibly alleged that Michigan will go forward with its lawsuit. *See, e.g.*, AC ¶¶ 14–30, PageID.68–73.

And Michigan has refused to "disavow" its intent to bring a lawsuit alleging state-law claims in state court for global greenhouse gas emissions. *Nessel*, 117 F.4th at 850–51. Just the opposite: Michigan "reaffirmed the threat of [a] future" climate change lawsuit in response to "the complaint." *Berry v. Schmitt*, 688 F.3d 290, 296–98 (6th Cir. 2012) (finding a challenge to a rule ripe given that "after-the-fact assurances did not diminish the threat of enforcement"). Attorney General Nessel stated in response to the United States' complaint that she remains "undeterred" in her intention to sue "Big Oil." AC Ex. 6, PageID.128. The United States then offered to dismiss its case in exchange for a disavowal of Michigan's intent "to bring state-law claims" for "alleged harms from greenhouse-gas emissions." *Id.* ¶ 30 n.2 PageID.73. Michigan has declined. The State will have another opportunity to disavow state-law claims for global greenhouse gas emissions in its reply brief. Michigan's actions and statements to date make that unlikely.

***Second***, Michigan argues that its lawsuit would need to contain "claims based on greenhouse gas emissions in other states" for this case to be ripe. Mem. PageID.147. Its lawsuit inevitably will. The fundamental premise of the lawsuit Michigan intends to file against "the fossil fuel industry" is that "*global*" greenhouse gas emissions cause in-state harm. AC Ex. 3, PageID.103 (emphasis added). Michigan's threatened suit thus necessarily will involve emissions and conduct in other States. According to her statement of work, for example, the "Attorney General of the State of Michigan seeks to hold fossil fuel companies [liable] . . . that profited from their actions for the damage they have caused and are causing" to the climate. *Id.* Ex.

3 § 1, PageID.103. Those "actions" are obviously not confined to Michigan—as further shown by judicially noticeable data proving "modest" petroleum activities there. *See supra* Background III.A. In fact, Michigan's statement of work makes clear that the injuries for which it will seek compensation extend far beyond its borders. *See, e.g.*, *id*. Ex. 3 § 2, PageID.103 (alleging that the "fossil fuel industry . . . hid information and deceived the public and consumers, *both in and outside of Michigan*, about the role of their products causing the *global* climate crisis") (emphases added); *id*. PageID.104 (stating that the "environment in *and around* Michigan . . . is changing as a result of fossil fuel product use and emissions") (emphasis added).

*Third*, Michigan contends that for the United States' injury to ripen, it must "not bring[] claims within the purview that the United States concedes would be proper for a State to bring." Mem. PageID.148–49 (citing AC ¶¶ 52–53, PageID.80). The United States acknowledges that a "slim reservoir" of State authority exists for "state lawsuits brought under 'the law of the pollution's source state.'" *City of New York*, 993 F.3d at 100 (citing *Ouellette*, 479 U.S. at 497) (cleaned up). Consider, as an example, a Grand Rapids factory emitting heavy metal pollutants that settle around Kalamazoo. Because those emissions originate *only* within Michigan, the State could use its own authority to regulate them.

But that is not the case Michigan has promised to bring, because there is no way around the fact that Michigan's coming complaint will target greenhouse gases "emanat[ing] simultaneously from all 50 states and the nations of the world," *id.*, and energy producers operating "in and outside of Michigan," AC Ex. 3 § 2, PageID.103.

Failing to appreciate the distinction between emissions (and conduct) originating *within* the State's borders and those emanating from *beyond*, Michigan falls short in suggesting that the United States pleaded inconsistent theories of liability when delineating permissible and impermissible state-law claims for air pollutants. *See* Mem. PageID.149–50. Michigan cannot impose its own standards on global greenhouse gases. And the United States seeks relief against only "state law claims" seeking to regulate interstate and global greenhouse gas emissions. AC PageID.92.

**Fourth and fifth**, Michigan argues that a court would need to rule on the merits of its state-law claims before this case ripens. *See* Mem. PageID.148. That has it backwards. The whole point of the United States' lawsuit is that Michigan's claims are already preempted by federal law and therefore should not be filed. At this stage, this Court must assume "the merits of [the United States'] legal claim." *Tanner-Brown*, 105 F.4th at 445. Further, the United States filed this lawsuit to vindicate its sovereign interests in the face of Michigan's threats, and it is "beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983) (citing *Ex parte Young*, 209 U.S. 123, 160–62 (1908)). Courts have thus rejected Michigan's wait-and-see argument, concluding that its approach would also "prevent most cases brought under *Ex parte Young* from being heard in time to give the relief that the *Young* doctrine sanctions." *Philip Morris Inc. v. Harshbarger,* 946 F. Supp. 1067, 1076 (D. Mass. 1996)

**C.** Michigan's cases do not support dismissing this lawsuit. In *Sherwin-*

22

*Williams Company v. County of Delaware*, 968 F.3d 264, 266 (3d. Cir. 2020), the court affirmed lack of Article III standing when the plaintiff sued several "counties to forestall lead-paint litigation those counties seemed poised to file." The court reasoned that, because the plaintiff's "constitutional claims . . . rest on what it anticipates the [c]ounty might allege in a hypothetical lawsuit" containing an "(unarticulated) public nuisance theory" of liability, such "speculation cannot satisfy Article III's standing requirements." *Id*. at 267, 270.

In contrast here, the United States' case does not rest on any one state-law claim Michigan might allege (*e.g.*, public nuisance), as Michigan cannot use *any* state-law claim to regulate greenhouse gas emissions. Because Michigan cannot artfully plead around the exclusive province of federal law, this case is distinguishable from *Sherwin-Williams*. Moreover, unlike the *Sherwin-Williams* plaintiff, who could protect its interests by raising affirmative defenses, the United States' interests here are as the federal sovereign and not as a potential defendant. These sovereign interests—which when encroached inflict "per se irreparable harm" to the United States, *United States v. Texas*, 719 F. Supp. 3d 640, 695 (W.D. Tex. 2024)—further distinguish this case from *Sherwin-Williams*, in which the plaintiff couldn't establish a "concrete *injury* to its constitutional rights." 968 F.3d at 270. Finally, the lawsuit in Sherwin Williams was merely "hypothetical," while Michigan has taken concrete steps to prepare for a lawsuit that is imminent.

Though Michigan also relies on *Saginaw County v. STAT Emergency Med. Servs.*, 946 F.3d 951 (6th Cir. 2020), the reasoning of that case supports the United

States. There, an ambulance service provider was operating in contravention of a local ordinance that permitted the operation of just one such service. *Id.* at 953. The county could have simply sought to enforce that ordinance against the rogue service provider, but it instead chose to seek a declaratory judgment that its single-service restriction complied with state and federal law. *Id.* In other words, the county sought a declaratory judgment that its *own regulation* was valid. Because the county itself was the one "in the driver's seat" on the decision whether to enforce its own law, the Sixth Circuit found it could not plausibly allege harm. *Id.* at 955. Rather, the purported controversy was based on a "speculative fear" that the jilted service provider *might* challenge the ordinance based on objections it had made *six years before*. *Id.* at 953, 955. That is a far cry from this case where, in direct response to this lawsuit, Michigan renewed its promise to bring climate change litigation.

*Saginaw County* also recognized that a judiciable controversy *can be* found in circumstances where the government shows "the actual or *threatened* invasion of its sovereign right to enforce the law." *Id.* at 957 (citing *United States v. West Virginia*, 295 U.S. 463 (1935)) (emphasis added). The need to protect such sovereign interests from a "threatened invasion" is exactly what the United States alleged here.[9]

---

[9] The other cases Michigan cites (Mem. PageID.148–49) are inapposite, because, unlike here, they involved speculative claims with no imminent injury. *See Doe v. Univ. of Mich.*, 78 F.4th 929, 950 (6th Cir. 2023) (plaintiff failed to "plead facts establishing that the harm he anticipated was *at all* 'likely to come to pass'") (emphasis added); *Baaghil v. Miller*, 1 F.4th 427, 435 (6th Cir. 2021) (challenge unripe because neither the plaintiff nor the court could "have *any idea*" when the government might act) (emphasis added); *Overdrive*, 986 F.3d at 958 (no showing that infringement would likely occur); *United States Dep't of Treasury v. Nat'l Treasury Emps. Union*, 783 F. Supp. 3d 991, 1010–11 (E.D. Ky. May 20, 2025) (noting similarities with *Saginaw County* in which future harm was "too speculative" and contingent upon plaintiff's own enforcement decisions and hypothetical reactions thereto).

24

**D.** Finally, Michigan implies at various points that it could legally follow through with its promise to sue the "fossil fuel industry" for climate change by bringing only "federal law" claims or claims under the law of the source state. *See* Mem. PageID.140, PageID.150; *see also City of New York*, 993 F.3d at 100 (explaining "slim reservoir of state common law" for suits brought under the source state). But Michigan does not identify any federal or source-state claims. The United States does not argue that such claims would be preempted and does not seek to enjoin them. *See* AC ¶ 22, PageID.70 & PageID.92 (seeking relief only as to "state law" claims based on out-of-state emissions or conduct). All that is required here is a plausible allegation of a "credible threat" that Michigan will bring at least one claim under Michigan law for out-of-state emissions or conduct. *Driehaus*, 573 U.S. at 159. The United States clears that hurdle based on the cottage industry and nationwide pattern and practice of asserting state-law claims for climate-change harms, among other reasons.

## II. The United States' Purely Legal Claims are Fit for Judicial Review and Deferring Review Now Would Impose Significant Hardship

Courts have cast "some doubt" on the "continuing vitality" of the "prudential aspects of the ripeness doctrine." *Kiser v. Reitz*, 765 F.3d 601, 606–07 (6th Cir. 2014). While it "seems doubtful" that federal courts may "refuse to resolve a claim presented in a current and 'concrete factual context' on the ground that the parties would not be hurt by a delayed resolution," for now courts continue to assess prudential concerns. *OverDrive Inc. v. Open E-Book Forum*, 986 F.3d 954, 958 (6th Cir. 2021). Assuming the vitality of the prudential aspects of ripeness, this case is still ripe because

25

the United States presents purely legal claims fit for judicial review and deferring review would inflict hardship on the United States.

**A.** This case raises pure questions of law that this Court should resolve now. The Supreme Court "has instructed that claims are fit for review if they present 'purely legal' issues that 'will not be clarified by further factual development.'" *Hill v Snyder*, 878 F.3d 193, 213–14 (6th Cir. 2017). The Sixth Circuit has thus found certain cases ripe where they are based on "theories that require no further factual development and that appear to raise only legal issues." *Carman v. Yellen*, 112 F.4th 386, 407 (6th Cir. 2024).

Here, the Amended Complaint asserts preemption and constitutional claims that can be fully resolved without factual development. *See Arizona v. United States,* 567 U.S. 387 (2012) (preemption questions decided on the pleadings). Courts have resolved similar climate change lawsuits on the pleadings. *See, e.g., City of New York,* 993 F.3d at 88–89; *Bucks*, 2025 WL 1484203, at *6 (collecting cases). And because no factual development is needed, other federal district courts are presently adjudicating the same preemption and constitutional claims brought by the United States against other States without discovery. *See United States v. New York et al.*, 2025 WL 2208941, at *4 (S.D.N.Y. Aug. 4, 2025) (setting pre-discovery summary judgment briefing schedule because the United States "made a plausible showing that the motion may be decided on facts that are either indisputable or facts of which the Court may take judicial notice"); *United States v. Vermont*, No. 2:25-cv-00463, ECF 23 (D. Vt. June 30, 2025) (setting a scheduling order without discovery). Just like these

26

courts, this Court should resolve this case on summary judgment because no factual development is needed.

Michigan suggests that the "barren factual record" here counsels against adjudicating this case. Mem. PageID.153. But Michigan does not explain what specific facts would be needed to ripen this case. It points to only one "core undisputed fact" that "Michigan has not sued anyone," Mem. PageID.142, but "action is not a prerequisite to challenging the law," *Driehaus,* 573 U.S. at 159.

Moreover, as evident by Michigan declining to challenge the merits of the United States' claims, the "legal issues" here are not "complex." Mem. PageID.153. On the contrary, a "growing chorus of state and federal courts" agree with the United States that state-law claims seeking to regulate global greenhouse gases are preempted. *City of Charleston*, 2025 WL 2269770, at *2 (quoting *Bucks*, 2025 WL 1484203, at *6) (citing cases).

**B.** Deferring review now imposes significant hardship on the United States. The hardship here flows from the nature of the alleged harm: Michigan's threatened interference with the United States' sovereignty. "Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect." *Arizona*, 567 U.S. at 398; *see also Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982) (recognizing cognizable "sovereign interests" when governments "demand [] recognition from other sovereigns"). Because the United States has established Article III injury by alleging a threat to its sovereign authority, which strikes at the heart

27

of how our nation functions, it comfortably clears the low hurdle of suffering hardship if a decision is delayed. *See Airline Pros. Ass'n of Int'l Bhd. of Teamsters, Loc. Union No. 1224, AFL-CIO v. Airborne, Inc.,* 332 F.3d 983, 988 n.4 (6th Cir. 2003) (noting that "the size of the harm matters tremendously in determining whether a claim is ripe"); *see also Yellen*, 112 F.4th at 404–07 (analyzing ripeness of enumerated-powers and Fourth Amendment claims alongside First Amendment claim); *Ameron, Inc. v. United States Army Corps of Eng'rs*, 809 F.2d 979, 987 (3d Cir. 1986) (noting that "the Supreme Court has adopted a uniquely flexible approach to ripeness in the separation of powers context" similar to the "First Amendment") (citing *Buckley v. Valeo,* 424 U.S. 1, 113–18 (1976)).

Indeed, interfering with federal authority here not only injures the United States but it inflicts a "per se irreparable harm." *Texas*, 719 F. Supp. 3d at 695; *see also United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011), *rev'd on other grounds by* 567 U.S. 387 (2012) (finding irreparable harm to the United States if Arizona enforced its preempted laws); *see also Midwest Title Loans, Inc. v. Ripley*, 616 F. Supp. 2d 897, 908 (S.D. Ind. 2009) (finding a violation of a structural right, there Dormant Commerce Clause, an "irreparable injury for the purposes of considering an injunction") (collecting cases), *aff'd sub nom. Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660 (7th Cir. 2010). And "the standard for ripeness requires a lesser showing of hardship" than the "irreparable harm" "standard for obtaining injunctive relief[.]" *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1385 (Fed. Cir. 2012).

The hardship to the United States in deferring adjudication is particularly

severe in the foreign affairs context, where the United States must speak with "one voice." AC ¶ 100, PageID.90. Greenhouse gas emissions pose a "uniquely international problem." *City of New York*, 993 F.3d at 85, 92 (quoting *Texas Inds., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981)) (cleaned up). Such concerns include, for example, formulating and implementing foreign policy for the "stabilization of greenhouse gas concentrations in the atmosphere at a level that would prevent dangerous anthropogenic interference with the climate system." AC ¶ 99, PageID.90 (quoting United Nations Framework Convention on Climate Change, May 9, 1992, S. Treaty Doc. No. 102-38, 1771 U.N.T.S.). Michigan's "efforts to impose state law liability" on *global* energy producers "complicate" these relations. *Id.* ¶ 100, PageID.90. Forcing the United States to stand by and wait to defend its sovereign interest in controlling foreign affairs would impose a clear hardship on its diplomatic efforts. *See Fischer v. Thomas*, 52 F.4th 303, 309 (6th Cir. 2022) (finding additional harm for ripeness purposes where an "ongoing investigation" that could lead to a future enforcement action had a present impact on the affairs of affected parties).

The hardship analysis must account for "heightened uncertainty" from delayed resolution of purely legal issues. *Nebraska Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1038 (8th Cir. 2000). Courts have thus found sufficient hardship for purposes of prudential ripeness when delay would lead to legal uncertainty. *See id.* (collecting cases); *see also Pacific Gas and Elec. Co. v. State Energy Resources Conserv. & Dev. Com'n,* 461 U.S. 190, 201–02 (1983) (acknowledging hardship due to uncertain state of law). Such is the case here where the United States is entitled to

29

know now whether federal law preempts Michigan from pursuing crippling damages against an industry that is critical to our nation. *See* Exec. Order No. 14260, § 1, 90 Fed. Reg. 15,513 § 1 (Apr. 8, 2025) (explaining that energy is critical "to the national and economic security of the United States, as well as our foreign policy").

Michigan is misguided in its analysis of hardship to the United States "from deferring judicial review *until*" after it files its climate change lawsuit. Mem. PageID.154 (emphasis added). According to the State, "[i]n the event Michigan files suit in state court seeking relief under state law," this Court would then need to determine whether to abstain under *Pullman*, 312 U.S. 496. Mem. PageID.140 n.1, PageID.157 (previewing arguments under *Pullman* abstention that applies primarily where "state-law questions" should be "decided by state courts," *Jones v. Coleman*, 848 F.3d 744, 750 (6th Cir. 2017)). But the federal government sued in federal court to vindicate its federal interests in the supremacy of federal law. The United States plainly suffers hardship if it cannot vindicate those interests before this Court. *See Michigan*, 635 F. Supp. at 946 ("The United States' right to bring such actions in the district courts as sovereign to protect its interests and policies is well established.").

Michigan also argues no hardship because "the United States is not altering its daily affairs or refraining from doing anything because of the possibility that Michigan could someday file" its lawsuit. Mem. PageID.154. That is the wrong standard to assess hardship to the federal sovereign. Interfering with the United States' exclusive authority, as explained, inflicts not only hardship on the United States but irreparable injury. *See Texas*, 719 F. Supp. at 695. Michigan thus misses the mark by

relying on cases (Mem. PageID.154–55) where *private parties* claimed hardship.[10] *Cf.* *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018) (noting that, unlike a private party, the government suffers an "irreparable harm" when it cannot carry out the orders of its elected representatives). In all events, the United States presents "general factual allegations" that Michigan interferes with its day-to-day foreign affairs. *Lujan*, 504 U.S. at 561; *see* AC ¶¶ 100–02, PageID 90–91 (alleging interference to ability to speak with "one voice").

**C.** Michigan's other prudential counterarguments fail. Michigan contends that "all the challenges [the United States] raises now could be raised by the actual defendants (if and when they are named)." Mem. PageID.155. But the United States is uniquely positioned to protect its distinct federal interests and vindicate the supremacy of federal law. No private party can vindicate these interests.

Michigan downplays the United States' interests in regulating global greenhouse gas emissions by mischaracterizing this lawsuit as one proceeding "in *parens patriae* to protect the fossil fuel industry" only. Mem. PageID.155; *id.* at PageID.156 (similar). That is short-sighted. The United States seeks to protect the well-being of its citizens, AC ¶ 7, PageID.66, and it is "common sense and basic economics" that lawsuits like Michigan's make energy development more costly, *City of New York*, 993 F.3d at 93 (noting that the "increased cost of conduct will make that conduct less

---

[10] *See Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 805, 810 (2023) (nonprofit trade association); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013) ("United States persons"); *Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726 (1998) (nonprofit); *Ohio Adult Video Ass'n v. U.S. Dep't of Just.*, 71 F.3d 563, 568 (6th Cir. 1995) (business trade association); *Google, Inc. v. Hood*, 822 F.3d 212, 225–26 (5th Cir. 2016) (private business); *Sherwin-Williams*, 968 F.3d at 270 (private business).

common") (cleaned up). These basic economics apply to energy that the United States has an interest in making "affordable and reliable." Exec. Order No. 14260, § 1, 90 Fed. Reg. 15,513 § 1 (Apr. 8, 2025).

Lastly, Michigan does not contend with pre-enforcement case law beyond a few fleeting references. *See, e.g.*, Mem. PageID.156 n.5. Michigan states that it is "not aware of any cases allowing pre-enforcement challenges except by potential defendants[]," but it is simply wrong to suggest that only those directly subject to enforcement can establish standing for a pre-enforcement challenge. *See, e.g.*, *Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 350–51 (2d Cir. 2008) (plaintiff could establish standing for pre-enforcement challenge alleging preemption even if plaintiff was not subject to enforcement proceedings because "the existence of an intermediate link between" the conduct and the injury is sufficient).

## CONCLUSION

After States and municipalities have filed dozens of materially identical complaints around the country, after nearly ten years of climate change litigation, after almost one year since retaining experienced climate change counsel to "vigorously pursue[]" climate change claims, and after refusing to disavow its intent to bring state-law claims for alleged harms from global greenhouse gas emissions, Michigan feigns ignorance about the claims its threatened lawsuit will raise. But the United States has plausibly alleged that Michigan's statements and actions and the "surrounding factual circumstances" present a "credible threat" that Michigan will file a climate change lawsuit to regulate global greenhouse gases under state law. *Nessel*,

117 F.4th at 848. That is enough for this case to proceed to the merits. Accordingly, this Court should deny Michigan's motion and allow the United States to seek to protect its sovereign interests from unlawful state interference.


Dated: September 29, 2025              Respectfully submitted,

                                       ADAM R.F. GUSTAFSON
                                       Acting Assistant Attorney General

                                       ROBERT N. STANDER
                                       Deputy Assistant Attorney General

                                       JUSTIN D. HEMINGER
                                       Acting Deputy Assistant Attorney General

                                       /s/ John K. Adams
                                       JOHN K. ADAMS
                                       Chief of Staff and Senior Counsel
                                       Environment and Natural Resources Div.
                                       U.S. Department of Justice Post Office Box
                                       7415 Washington, D.C. 20044
                                       (202) 353-5905
                                       John.Adams3@usdoj.gov

                                       *Counsel to the United States*

**CERTIFICATE OF COMPLIANCE**

This opposition complies with the word limit of W.D. Mich. LCivR 7.2(b)(i) because, excluding the parts exempted by W.D. Mich. LCivR 7.2(b)(i), it contains 9,448 words. The word count was generated using Microsoft Word.

<u>/s/ John K. Adams</u>
JOHN K. ADAMS
Chief of Staff and Senior Counsel
Environment and Natural Resources Div.
U.S. Department of Justice Post Office Box
7415 Washington, D.C. 20044
(202) 353-5905
John.Adams3@usdoj.gov

*Counsel to the United States*