UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v

STATE OF MICHIGAN; GRETCHEN
WHITMER; and DANA NESSEL,

    Defendants.

No. 1:25-cv-00496-JMB-SJB

HON. JANE M. BECKERING

MAG. SALLY J. BERENS

**REPLY BRIEF IN SUPPORT
OF RENEWED MOTION TO
DISMISS**

---

Adam R.F. Gustafson
Acting Assistant Attorney General
Robert N. Stander
Deputy Assistant Attorney General
Justin D. Heminger
Acting Deputy Assistant Attorney General
John K. Adams
Chief of Staff and Senior Counsel
Attorneys for Plaintiff
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7415
Washington, D.C. 20044
202-514-5442
john.adams3@usdoj.gov

---

Richard S. Kuhl (P42042)
Assistant Attorney General
Attorney for Defendants
Michigan Department of Attorney General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
517-335-7664
KuhlR@michigan.gov

David M. Uhlmann
D.C. Bar No. 428216
Special Assistant Attorney
General
Attorney for Defendants
Marten Law LLP
Attorney for Defendants
1747 Pennsylvania Ave NW, Ste
1250
Washington, DC 20006
202-642-3648
duhlmann@martenlaw.com

---

**REPLY BRIEF IN SUPPORT OF RENEWED MOTION TO DISMISS**

Richard S. Kuhl (P42042)
Assistant Attorney General
Attorney for Defendants
Michigan Department of Attorney General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
KuhlR@michigan.gov

David M. Uhlmann
D.C. Bar No. 428216
Special Assistant Attorney General
Attorney for Defendants
Marten Law, LLP
1747 Pennsylvania Avenue NW
Suite 1250
Washington, DC 20006
(202) 642-3648
duhlmann@martenlaw.com

Dated:  October 13, 2025

# TABLE OF CONTENTS

Page

Index of Authorities ....................................................................................................ii

Introduction .............................................................................................................. 1

Argument .................................................................................................................. 1

I.  This case is not ripe, and the United States lacks standing. ........................... 1

    A.  The United States alleges claims that do not arise in a concrete factual context, relies on speculative injuries that are not imminent, and anticipates a hypothetical future dispute that is uncertain to come to pass. ..................................................................... 2

        1.  Michigan has not determined what specific claims it will pursue against the fossil fuel industry. ....................................... 3

        2.  The "credible threat" cases cited by the United States are inapposite and cannot ripen its speculative claims. ................... 4

        3.  The United States fails to address key ripeness case law that requires dismissal of its claims. ........................................... 8

    B.  The United States will suffer no hardship from deferring judicial review unless and until its claims are ripe. ........................................ 10

Conclusion and Relief Requested .............................................................................. 15

# INDEX OF AUTHORITIES

Page

**Cases**

*Abbott v. Perez*, 585 U.S. 579 (2018) ................................................................ 13

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937) ............................................ 3, 14

*Airline Pros. Ass'n of Int'l Bhd. of Teamsters, Loc. Union No. 1224, AFL-CIO v. Airborne, Inc.,* 332 F.3d 983 (6th Cir. 2003) ........................................... 11

*Alfred L. Snapp & Son v. Puerto Rico*, 458 U.S. 592 (1982) ..................................... 13

*Ameron, Inc. v. U.S. Army Corps of Eng'rs*, 809 F.2d 979 (3d Cir. 1986) ................ 13

*Arizona v. United States*, 567 U.S. 387 (2012) ...................................................... 12

*Babbitt v. Farm Workers*, 442 U. S. 289 (1979) ...................................................... 5

*Berry v. Schmitt*, 688 F.3d 290 (6th Cir. 2012) ...................................................... 6

*Carman v. Yellen*, 112 F.4th 386 (6th Cir. 2024) .................................................. 13

*Christian Healthcare Centers, Inc. v. Nessel*, 117 F.4th 826 (6th Cir. 2024) .......... 6, 7

*Fischer v. Thomas*, 52 F.4th 303 (6th Cir. 2022) .................................................... 12

*Hill v. Snyder*, 878 F.3d 193 (6th Cir. 2017) .......................................................... 6

*Kentucky v. Yellen*, 54 F.4th 325 (6th Cir. 2022) .................................................... 6

*Maryland Casualty v. Pac. Coal & Oil Co.*, 312 U.S. 270 (1941) ............................. 6

*McKay v. Federspiel*, 823 F.3d 862 (6th Cir. 2016) ................................................ 6

*Midwest Title Loans, Inc. v. Ripley*, 616 F. Supp. 2d 897 (S.D. Ind. 2009) ............. 13

*Miller v. City of Wickliffe*, 852 F.3d 497 (6th Cir. 2017) ........................................ 6

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) ..................................... 7

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003) ........................... 11, 14

*Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032 (8th Cir. 2000) .................................................................................... 11, 12

*New Heights Farm I, LLC v. Great Am. Ins. Co.*, 119 F.4th 455 (6th Cir. 2024)..2, 10

*Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726 (1998)........................................4, 14

*Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341 (2d Cir. 2008) ....................5, 6

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190 (1983) ...............................................................................................................11

*Philip Morris Inc. v. Harshbarger*, 946 F. Supp. 1067 (D. Mass. 1996) .....................7

*Pub. Serv. Com. v. Wycoff Co.*, 344 U.S. 237 (1952) ....................................................15

*Saginaw County v. STAT Emergency Medical Services, Inc.*, 946 F.3d 951 (6th Cir. 2020) ...............................................................................................9, 10, 13

*Shaw v. Delta Air Lines*, 463 U.S. 85 (1983) ................................................................7

*Sherwin-Williams Co. v. County of Delaware*, 968 F.3d 264 (3d Cir. 2020)............8, 9

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014).........................................5, 6

*Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374 (Fed. Cir. 2012) ...............................................................................................................................13

*Tanner-Brown v. Haaland*, 105 F.4th 437 (D.C. Cir. 2024)........................................2

*Terry v. Tyson Farms, Inc.*, 604 F.3d 272 (6th Cir. 2010) ..........................................13

*Texas v. United States*, 523 U.S. 296 (1998) ........................................................10, 12

*Travelers Ins. v. Obusek*, 72 F.3d 1148 (3d Cir. 1995)..................................................6

*Trump v. New York*, 592 U.S. 125 (2020) ................................................................2, 8

*United States v. Michigan*, 635 F. Supp. 944 (W.D. Mich. 1985).............................13

*United States v. New York*, No. 1:25-cv-03656 (S.D.N.Y. May 1, 2025) ...................12

*United States v. Supreme Court of New Mexico*, 839 F.3d 888 (10th Cir. 2016).........6

*United States v. Texas*, 719 F. Supp. 3d 640 (W.D. Tex. 2024)................................12

*United States v. Vermont*, No. 2:25-cv-00463-mkl (D. Vt. May 1, 2025) ..................13

*United States v. West Virginia*, 295 U.S. 463 (1935)...................................1, 9, 10, 12

*Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988) .......................................6

## INTRODUCTION

At present, as when this case was initiated more than five months ago, Michigan has not filed a climate-related lawsuit against any fossil fuel companies. No one knows what specific claims it will bring:  not the United States, not the Court, and not even Michigan, as pre-suit investigation remains in process.

The United States cannot overcome these facts.  Without specific claims to analyze for alleged preemption or unconstitutionality, this case is not ripe, and the United States lacks standing.  Its preemptive suit and brazen attack on state sovereignty therefore must be dismissed for lack of subject-matter jurisdiction.

## ARGUMENT

## I.    This case is not ripe, and the United States lacks standing.

In its response to Michigan's Motion to Dismiss, the United States seeks to muddy the waters on the standard of review for ripeness and standing.[1]  But the rules are straightforward.  The United States must prove justiciability just like any other plaintiff.  *United States v. West Virginia*, 295 U.S. 463, 473–75 (1935).  To satisfy ripeness, the United States must prove that its claims arise in a "concrete factual context" and "concern a dispute that is likely to come to pass," and that deferring review would impose "hardship" on the United States.  *New Heights Farm*

---

[1] *See* U.S. Mem. Opp. Defs.' Mot. Dismiss ("Mem."), ECF No. 19 at PageID.203 (erroneously claiming "Michigan fail[ed] to grapple with binding pre-enforcement case law"); *id.* at PageID.203 (misleadingly suggesting existence of "contingent events is not the test" for ripeness); *id.* at PageID.216 (falsely stating that standard formulation of ripeness inquiry "is the wrong standard to assess hardship to the federal sovereign"); *id.* at PageID.209, 214, 216–17 (citing irrelevant cases on entitlement to injunctive relief rather than justiciability).

1

*I, LLC v. Great Am. Ins. Co.*, 119 F.4th 455, 460 (6th Cir. 2024) (cleaned up).  To satisfy Article III standing, it must show an injury in fact that is "concrete, particularized, and imminent rather than conjectural or hypothetical."  *Trump v. New York*, 592 U.S. 125, 131 (2020) (cleaned up).  The United States has not and cannot meet either test.

> ### A.    The United States alleges claims that do not arise in a concrete factual context, relies on speculative injuries that are not imminent, and anticipates a hypothetical future dispute that is uncertain to come to pass.

If it elects to pursue climate action against the fossil fuel industry, Michigan could bring a variety of claims:  under state or federal law, encompassing intrastate or interstate emissions, targeting deceptive marketing representations by fossil fuel companies, or based on some other combination of legal theories and factual assertions.  Unless and until Michigan does so, however, there is no concrete factual context for the Court to evaluate the United States' preemption arguments, no cognizable injury to the United States, and no actual dispute to adjudicate.

It simply is not true that the Amended Complaint presents "purely legal" questions, as the United States asserts (Mem. at PageID.189, 212–13).  The factual basis for the Amended Complaint remains speculative.  No one knows what claims Michigan will ultimately bring.  Even if the Court "assume[s] *arguendo* the merits" of the United States' legal arguments for purposes of the motion to dismiss, *Tanner-Brown v. Haaland*, 105 F.4th 437, 445 (D.C. Cir. 2024) (citations omitted), the Court cannot likewise assume the hypothesized factual premise behind the United States' claims without rendering an impermissible advisory opinion.  *See Aetna Life Ins.*

*Co. v. Haworth*, 300 U.S. 227, 240–41 (1937) (federal court cannot issue "an opinion advising what the law would be upon a hypothetical state of facts").

> ### 1. Michigan has not determined what specific claims it will pursue against the fossil fuel industry.

The United States tries to downplay the fact that it has pursued unripe claims against Michigan in both its Complaint and its Amended Complaint. First, the United States insists it knows that Michigan will "inevitably" file state-law claims targeting interstate and global emissions (*id.* at PageID.204–08). It points primarily to the background section of the Statement of Work for outside counsel retained by Michigan, which describes fossil fuel companies' contributions to the "global climate crisis" (Am. Compl., Ex. 3, ECF No. 8 at PageID.103). Nothing in the Statement of Work commits Michigan to filing any claims, much less the claims the United States anticipates. On the contrary, the Statement of Work leaves open what kinds of claims will be brought. Outside counsel are to "assist[]" Michigan in "determining what claims will be brought," "draft[] the complaints (*as appropriate*)," "identify[] *viable* claims," and pursue such claims only if "specifically and expressly agreed to by the Attorney General" (*id.* at PageID.104–05 (emphases added)).

The Court's preemption analysis will differ depending on what claims Michigan pursues against fossil fuel companies. If Michigan were to pursue only federal claims, the United States concedes its own lawsuit would be pointless. *See* Mem. at PageID.197 ("The United States' suit does not seek to bar Michigan from asserting federal claims related to its alleged harms."); *id.* at PageID.211. Even if Michigan were to pursue state-law claims, some state-law claims have defeated

preemption arguments, while others have not (ECF No. 11 at PageID.152 & n.4).  In addition, the United States concedes state-law claims targeting intrastate emissions would not be preempted (Mem. at PageID.211).  These concessions aptly illustrate one reason for the ripeness requirement and why it is not met.  *See Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732–33 (1998) (ripeness "is designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements" (cleaned up)).

The United States therefore is incorrect and contradicts itself in asserting that state-law claims "all would be preempted" (Mem. at PageID.202), regardless of how Michigan proceeds.  While the United States continues to insist that it knows what claims Michigan will pursue (*id.* at PageID.192–94, 205), there is no reason to assume the firms retained by Michigan will recommend pursuing only the same legal theories they have in the past—particularly those that have not succeeded.

As Michigan's Attorney General put it:  "Any lawsuit we file against the fossil fuel industry is still in the development stage and entirely unknown to the [Trump] administration" (Am. Compl., Ex. 6, ECF No. 8 at PageID.128).  Because Michigan is still deciding which claims to bring, this case is premature.  On that basis alone, the Court should dismiss this matter for lack of subject-matter jurisdiction.

### 2. The "credible threat" cases cited by the United States are inapposite and cannot ripen its speculative claims.

In a futile effort to salvage its unripe claims, the United States invokes the "credible threat" line of cases (Mem. at PageID.203–06).  In some circumstances, a threat of enforcement suffices to demonstrate a concrete injury and a concrete

factual context. "[A] plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. Farm Workers*, 442 U. S. 289, 298 (1979)). None of these circumstances are present here.

An alleged threat that is "imaginary or wholly speculative" cannot give rise to an injury in fact. *Babbitt*, 442 U.S. at 302. The United States cannot seriously profess an "intention to engage in a course of conduct" that is "proscribed" by Michigan's unfiled lawsuit against the fossil fuel industry. *Id.* at 298. Michigan is not threatening to "prosecut[e]" the United States, which makes the pre-enforcement standing framework inapplicable to this case. *Id.*

The United States nonetheless claims that "it is simply wrong to suggest that only those directly subject to enforcement can establish standing for a pre-enforcement challenge" (Mem. at PageID.218). But the only case it cites to support its position involved a bank and its agents directly regulated by the challenged state statute, not a third party like the United States. *See Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 350 (2d Cir. 2008).[2] Indeed, the credible threat doctrine

---

[2] In finding that the bank was injured in part through its agents, the *Pacific Capital Bank* court noted that "a plaintiff does not lack standing simply by virtue of the indirectness of [its] injury" and may instead "satisfy the causation requirement if the complaint avers the existence of an intermediate link between the state regulations and the injury." 542 F.3d at 350 (also requiring, to find standing, that a plaintiff's "interpretation of a statute is reasonable enough and under that interpretation [it] may legitimately fear that it will face enforcement of the statute")

is predominantly asserted by individuals who forego speech or other constitutionally protected conduct (thereby suffering a present and concrete injury) due to a justifiable fear of prosecution, *see, e.g.*, *McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016), not by third parties.

More importantly, even if we assume for the sake of argument that the credible threat cases cited by the United States should bear on the Court's analysis, those cases all rested on a concrete factual context where the parties knew and did not dispute what the legal inquiry for the courts would be:  evaluating the application or validity of *specifically identified legal provisions*.[3]  In contrast, there are no specific claims before the Court to evaluate as preempted or unconstitutional.

---

(cleaned up).  The fossil fuel industry is not the United States' agent.  In any event, the Court need not reach the nuances of the credible-threat cases as applied to unregulated third parties alleging a hypothetical indirect injury:  There is no interpretation of any specific law to assess, as Michigan is still evaluating the basis for its potential lawsuit.

[3] Every case cited by the United States is readily distinguishable.  See *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 896 (10th Cir. 2016) (United States challenged specific state rule of professional conduct as applied to federal prosecutors); *Maryland Casualty v. Pac. Coal & Oil Co.*, 312 U.S. 270, 272–73 (1941) (insurance company sought declaratory judgment on its obligations under existing insurance contract); *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392–93 (1988) (plaintiffs challenged application of specific enacted state statute); *Travelers Ins. v. Obusek*, 72 F.3d 1148, 1154–55 (3d Cir. 1995) (plaintiff sought declaratory judgment regarding its obligations under enacted state statute); *Susan B. Anthony List*, 573 U.S. at 151–52 (plaintiffs challenged enacted state statute); *Christian Healthcare Centers, Inc. v. Nessel*, 117 F.4th 826, 836 (6th Cir. 2024) (plaintiffs challenged enforcement under specific state statutes); *Berry v. Schmitt*, 688 F.3d 290, 296–98 (6th Cir. 2012) (plaintiff attorney brought as-applied challenge to specific state rule of professional conduct); *Kentucky v. Yellen*, 54 F.4th 325, 336 (6th Cir. 2022) (state challenged specific provision of specific federal statute); *Miller v. City of Wickliffe*, 852 F.3d 497 (6th Cir. 2017) (plaintiffs challenged specific city ordinance); *Hill v. Snyder*, 878 F.3d 193, 200–01 (6th Cir. 2017) (plaintiffs challenged specific state criminal statutes); *Pac. Capital Bank*, 542 F.3d at 350

The United States also protests that Michigan has not "disavow[ed] any intent to bring state-law claims against fossil fuel companies" (Mem. at PageID.187, 206, 211, quoting Am. Compl. ¶ 30 n.2). But the United States cannot insist that Michigan pursue only state-law claims that meet with the preapproval of the federal government—and that Michigan must disavow state-law claims that the United States does not support. The argument that Michigan and other states must condition their sovereign authorities on federal approval finds no support in the Constitution or our system of federalism. Nor do any of the "disavowal" cases the United States cites support unfettered federal control over state sovereignty; in those cases, enforcement of a specific existing law (against the particular plaintiff in the case) had already been threatened and could be disavowed. *See, e.g.*, *Christian Healthcare*, 117 F.4th at 851 (concerning applications of Michigan's Equal Accommodations Act, Mich. Comp. Laws §§ 750.146–147); *supra* n.3. In contrast, Michigan has not decided which laws to invoke in litigation against fossil fuel companies, so there is nothing to disavow and no concrete dispute for an Article III court to adjudicate.

---

(plaintiff challenged enacted state financial statute); *Shaw v. Delta Air Lines*, 463 U.S. 85, 88 (1983) (plaintiff challenged enacted state discrimination statute); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378–80 (1992) (ripeness not at issue; specific statutory grounds for threatened enforcement were unmistakable from notices of intent to sue, extensive guidelines issued by National Association of Attorneys General, and memoranda sent to airlines); *Philip Morris Inc. v. Harshbarger*, 946 F. Supp. 1067, 1075–76 (D. Mass. 1996) (state attorney general's filing of threatened lawsuit during pendency of pre-enforcement challenge to the same obviated any question of what specific grounds of suit would be).

### 3.    The United States fails to address key ripeness case law that requires dismissal of its claims.

Finally, the United States ignores or only superficially distinguishes the key cases cited by Michigan (Mem. at PageID.208–10), which require dismissal for lack of subject matter jurisdiction.  The United States does not bother to address *Trump v. New York*, in which the Supreme Court held that a challenge to a Presidential memorandum that had not yet matured into a final policy was unripe.  592 U.S. at 131–133 (memorandum directed implementation of apportionment policy "to the extent practicable" and "feasible," but case challenging the apportionment policy was not ripe because how the policy would ultimately be implemented, if at all, was uncertain).  The *Trump* decision controls here.

The United States unpersuasively addresses *Sherwin-Williams County v. County of Delaware*, 968 F.3d 264, 267–70 (3d Cir. 2020)—a case closely analogous to this one—where the plaintiff paint company preemptively sued a county to prevent it from initiating lead-paint litigation, predicting what legal theory the county would allege in a future lawsuit based on its retention of outside counsel and prior lawsuits brought by other counties.  Finding the suit "require[d] speculation," the Third Circuit affirmed dismissal for lack of ripeness and standing.  *Id.* at 272.  The United States attempts to distinguish the case on the flimsy ground that it is speculating more generally than the plaintiff in *Sherwin-Williams*.  *See* Mem. at PageID.209 ("[T]he United States' case does not rest on any one state-law claim Michigan might allege (*e.g.*, public nuisance) . . . .").  The point makes little sense— speculation is speculation.  It cannot confer ripeness or standing.

The United States also suggests erroneously that "sovereign interests" deserve special solicitude beyond the paint company's interests (*id.*).  But the United States has no special exemption from Article III's case-or-controversy requirement.  *West Virginia*, 295 U.S. at 473–75.  Without elaborating, the United States claims "Michigan has taken" more "concrete steps" toward a lawsuit than did the county in *Sherwin-Williams* (Mem. at PageID.209).  But the United States relies on Michigan's retention of counsel and prior climate suits brought by other states and municipalities to speculate about what claims Michigan may ultimately bring (*id.* at PageID.192–94, 196, 205–05)—just like the plaintiff in *Sherwin-Williams*.  968 F.3d at 267–68.

The United States also fails to meaningfully distinguish *Saginaw County v. STAT Emergency Medical Services, Inc.*, 946 F.3d 951 (6th Cir. 2020).  There, the defendant ambulance service company had been intruding on the exclusive service area the plaintiff county had granted another company.  *Id.* at 953.  For years, the defendant had communicated, but not acted on, legal objections to the ordinance and contract creating the exclusive service area.  *Id.* at 953–54.  Seeking to pre-litigate various defenses the county thought the company might raise in response to enforcement, the county sued the company, seeking a declaration that the county's exclusivity arrangement was lawful.  *Id.*  The Sixth Circuit affirmed dismissal for lack of standing, writing:  "Because federal courts have the power to tell parties what the law is, not what it might be in a potential enforcement action by the government, no jurisdiction exists."  *Id.* at 953 (citations omitted).  It does not

9

matter, as the United States suggests (Mem. at PageID.209–210), that in *Saginaw* the governmental entity in control of potential enforcement was the one that preferred to pre-litigate the dispute.  The "central defect" in *Saginaw* was that the plaintiff had alleged only "speculative fear" about future legal claims the defendant might raise but had "never clearly stated," and that such speculation did not amount to an Article III injury.  946 F.3d at 959 (cleaned up).  The same is true regarding the Amended Complaint here, which also should be dismissed for lack of subject-matter jurisdiction.

### B.    The United States will suffer no hardship from deferring judicial review unless and until its claims are ripe.

The United States fails to demonstrate that deferring review would "impose 'hardship'" on it.  *New Heights Farm*, 119 F.4th at 460 (citation omitted).  It first complains that deferring review would somehow interfere with the United States' "sovereign authority" and its ability to "speak with 'one voice'" on foreign affairs (Mem. at PageID.213–15).  It strains credulity for the United States to insist that Michigan is interfering with the sovereignty of the United States and its ability to conduct foreign affairs by merely considering legal action against the fossil fuel industry.  Absurdity aside, however, these are the sorts of "abstraction[s]" that the Supreme Court finds "inadequate to support suit unless the [plaintiff]'s primary conduct is affected."  *Texas v. United States*, 523 U.S. 296, 302 (1998) (refusing to credit state's "claim[] that it suffers the immediate hardship of a 'threat to federalism'" for purposes of ripeness analysis); *West Virginia*, 295 U.S. at 475

(rejecting United States' generalized invocation of "[t]he sovereign rights of the United States to control navigation" in support of justiciability).

Second, the United States asserts that deferring review would impose a hardship of "legal uncertainty" (Mem. at PageID.215).  But the Supreme Court has admonished that "mere uncertainty as to the validity of a legal rule" does not amount to "real hardship" for purposes of the ripeness analysis.  *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 811–12 (2003); *Airline Pros. Ass'n of Int'l Bhd. of Teamsters, Loc. Union No. 1224, AFL-CIO v. Airborne, Inc.,* 332 F.3d 983, 988 (6th Cir. 2003) (plaintiff "had to allege more" than "abstract uncertainty" about a legal question to establish ripeness).  If courts were to hold otherwise, they "would soon be overwhelmed with requests for what essentially would be advisory opinions."  *Nat'l Park Hosp. Ass'n*, 538 U.S. at 811.  The cases cited by the United States found hardship not from mere legal uncertainty, but from threatened "expenditures of millions of dollars," *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983), "anticipated exposure of up to $500,000,000" in costs, *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1039 (8th Cir. 2000), and "self-censoring" protected speech while "divert[ing] significant time and resources" to respond to an investigation and

threat of enforcement, *Fischer v. Thomas*, 52 F.4th 303, 307–09 (6th Cir. 2022) (citation omitted).[4]  No such harms are present here.[5]

Third, the United States suggests that, as a sovereign, it is subject to a special dispensation from the normal rules of justiciability and does not need to prove that it is altering its primary conduct to show hardship (Mem. at PageID.216–17).  That is not the law.  *See Texas*, 523 U.S. at 302 (no hardship to sovereign, Texas, unless it shows its "primary conduct is affected"); *West Virginia*, 295 U.S. at 473–75 (United States is bound by justiciability limitations of Article III).  The United States cites *United States v. Texas*, 719 F. Supp. 3d 640, 695 (W.D. Tex. 2024), where the court found that the United States would suffer "per se irreparable harm" to its sovereign interests in the absence of injunctive relief as to a preempted state statute.  But in that case, the court could assess the validity of a specific enacted statute.  *Id.*  Likewise, the other cases cited by the United States in support of hardship concerned final and specifically identified laws, contracts, or agency decisions.[6]  In contrast, here, there are no claims for the Court to assess.  The

---

[4] Moreover, in *Fischer*, the plaintiff judicial candidates were engaging in campaign speech that triggered investigations by a state agency for violations of specific rules of the Kentucky Code of Judicial Conduct.  52 F.4th at 306–07.  Thus, unlike the United States, the plaintiffs there could point to specific legal provisions threatened to be imminently enforced.  *Fischer* in no way supports the United States' proposition that deferring review "would impose a clear hardship on its diplomatic efforts" (Mem. at PageID.215).

[5] Instead, the hardships here—unnecessary expenditures of time and resources by the Court and Michigan—are inflicted rather than borne by the United States.

[6] See *Arizona v. United States*, 567 U.S. 387, 392–93 (2012) (ripeness not at issue; United States challenged specific state statute); Compl., *United States v. New York*, No. 1:25-cv-03656 (S.D.N.Y. May 1, 2025) (United States challenged specific state climate statute); Compl., *United States v. Vermont*, No. 2:25-cv-00463-mkl (D. Vt.

United States also cites *Abbott v. Perez*, 585 U.S. 579, 602 n.2 (2018), for the obvious proposition that a sovereign can assert a sovereign injury, while a private party cannot (Mem. at PageID.217).  True enough, but the issue is not whether the United States can assert a sovereign interest, but whether it is bound by ripeness and standing doctrines that prevent it from asserting that interest prematurely.  It is.

As a fallback, the United States contends via one conclusory sentence that the possibility of Michigan's lawsuit has "interfere[d] with its day-to-day foreign affairs" (*id.* at PageID.217).  It speculates that "Michigan's anticipated lawsuit could undermine the ability of the United States to speak with one voice on a matter of pressing interest around the globe" (Am. Compl. ¶¶ 100–02).  These allegations are, at best, the sorts of "legal conclusions," "unwarranted factual inferences," or "legal conclusions masquerading as factual allegations" that courts need not accept as true in deciding motions to dismiss.  *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010) (cleaned up).  Indeed, it defies belief that what Michigan has done to date—"talk[ed] about potential legal claims," *Saginaw*, 946 F.3d at 955—has caused

---

May 1, 2025) (same); *Alfred L. Snapp & Son v. Puerto Rico*, 458 U.S. 592, 594–97 (1982) (ripeness not at issue; Puerto Rico sued apple industry for violations of specific federal laws); *Carman v. Yellen*, 112 F.4th 386, 391 (6th Cir. 2024) (plaintiffs challenged provision of specific federal statute); *Ameron, Inc. v. U.S. Army Corps of Eng'rs*, 809 F.2d 979, 987–88 (3d Cir. 1986) (federal contractor challenged provisions of specific federal statute); *Midwest Title Loans, Inc. v. Ripley*, 616 F. Supp. 2d 897, 908 (S.D. Ind. 2009) (ripeness not at issue; plaintiff sought to enjoin threatened enforcement of specific state law); *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1384 (Fed. Cir. 2012) (plaintiff challenged federal agency's final determination terminating plaintiff's contract award); *United States v. Michigan*, 635 F. Supp. 944, 953 (W.D. Mich. 1985) (United States challenged specific state sales tax as applied to federal instrumentality), *aff'd*, 851 F.2d 803 (6th Cir. 1988).

any change in the federal government's "day-to-day affairs," much less "irremediably adverse consequences." *Nat'l Park Hosp. Ass'n*, 538 U.S. at 810 (citation omitted).

Finally, the United States suggests it will not be able to "vindicate" its sovereign interests unless its suit is allowed to proceed now (Mem. at PageID.209, 217).  It never responds to Michigan's point that seeking intervention in any eventual climate suit filed by Michigan would be a perfectly adequate way to address all the United States' legal arguments (ECF No. 11 at PageID.155).  See *Ohio Forestry Ass'n*, 523 U.S. at 734 (no hardship where plaintiff "will have ample opportunity later to bring its legal challenge at a time when harm is more imminent and more certain").  That point remains undisputed, and the procedural path of seeking intervention would be the proper one if events that the United States speculates will happen indeed occur.  The United States fails to provide any good reason why it cannot wait to adjudicate its claims.  It instead improperly seeks an advisory opinion that would declare the winner of a lawsuit before it is even filed. The United States admits:  "The whole point of the United States' lawsuit is that Michigan's claims"—more specifically, the claims the United States predicts Michigan might bring at some point—are allegedly "already preempted by federal law and therefore should not be filed" (Mem. at PageID.208).  Such actions are impermissible in federal courts. *See Aetna Life Ins. Co.*, 300 U.S. at 240–41.  The United States can get its say after any lawsuit is filed.

14

## CONCLUSION AND RELIEF REQUESTED

The United States' suit is "much like asking a declaration that the State has no power to enact legislation that may be under consideration but has not yet shaped up into an enactment." *Pub. Serv. Com. v. Wycoff Co.*, 344 U.S. 237, 245 (1952).  If the contention that an unfiled lawsuit asserting unknown claims can be adjudicated now were true, there would be no stopping point.  Bills, potential regulations, memoranda, lawsuits, and other inchoate state policies would be subject—before enactment, promulgation, filing, or issuance—to the scrutiny of a Department of Justice transformed into a roving hall monitor with near-boundless authority.  In a future like that, Article III and federalism would not survive. Michigan respectfully asks the Court to avert that path and all it portends.

For all the foregoing reasons, Michigan requests that the Court hold that the Amended Complaint is unripe, dismiss for lack of subject-matter jurisdiction, and award attorney's fees, costs, and other relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Richard S. Kuhl*
Richard S. Kuhl (P42042)
Assistant Attorney General
Attorney for Defendants
Michigan Department of Attorney General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
KuhlR@michigan.gov

David M. Uhlmann
D.C. Bar No. 428216
Special Assistant Attorney General
Attorney for Defendants
Marten Law, LLP
1747 Pennsylvania Avenue NW
Suite 1250
Washington, DC 20006
(202) 642-3648
duhlmann@martenlaw.com

Dated:  October 13, 2025

16

## CERTIFICATE OF COMPLIANCE

This memorandum complies with the word limit of W.D. Mich. LCivR 7.3(b)(i) because, excluding the parts exempted by W.D. Mich. LCivR 7.3(b)(i), it contains 4,298 words. The word count was generated using Microsoft Word for Microsoft 365 MSO Version 2505.

*/s/ Richard S. Kuhl*
Richard S. Kuhl (P42042)
Assistant Attorney General
Attorney for Defendants
Michigan Department of Attorney General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
KuhlR@michigan.gov